## WALLACE *v.* STATE OF INDIANA.

[No. 25,177.    Filed June 30, 1927.]

1. SEARCHES AND SEIZURES.—*Determination of probable cause for issuing search warrant is judicial.*—The action of a court or magistrate in determining the question of probable cause, on which to base the issue of a search warrant, is judicial. p. 325.

2. SEARCHES AND SEIZURES.—The existence of probable cause for issuing a search warrant, within the meaning of the Constitution, is not for ministerial determination.    p. 326.

3. SEARCHES AND SEIZURES.—*Sufficiency of affidavit for search warrant.*—An affidavit in support of probable cause for issuing a search warrant must bear the countenance of truth, which is so infallible that either an action for damages or a criminal charge of perjury may be legally predicated thereon if the statements therein are untrue.    p. 326.

4. SEARCHES AND SEIZURES.—All present authority to issue a search warrant, and the exercise of authority thereunder, result from written law, either the Constitution or the statutes or both.    p. 326.

5. SEARCHES AND SEIZURES.—A search warrant and the statements on oath or affirmation on which probable cause for issuing it is based must conform strictly to the Constitution and the statutes.    p. 326.

6. SEARCHES AND SEIZURES.—*Search and seizure statutes must be strictly construed.*—Statutes relating to search and seizure must be strictly construed in favor of the constitutional right of the people.    p. 327.

7. SEARCHES AND SEIZURES.—*Constitutional guaranty must be liberally construed.*—The constitutional guaranty against unreasonable search and seizure must receive a liberal construction in its application to the rights of the people.    p. 327.

8. SEARCHES AND SEIZURES.—*Formalities required by law must be strictly complied with in executing warrant.*—In executing a search warrant, there must be a strict compliance with whatever formalities are required by law.    p. 327.

9. SEARCHES AND SEIZURES.—*Evidence secured by unlawful search inadmissible.*—Evidence secured by unreasonable search and seizure may not be admitted against an accused over timely objection.    p. 327.

10. SEARCHES AND SEIZURES.—All searches and seizures executed in violation of law are unreasonable.    p. 327.

11. SEARCHES AND SEIZURES.—*State has burden of sustaining questioned search warrant.*—On a motion to quash a search warrant and to suppress the evidence obtained thereby, the state has the burden of sustaining the writ.    p. 327.

12. INTOXICATING LIQUORS.—*If section of Prohibition Law of 1925 (§2746 Burns 1926), authorizes issue of search warrants on affidavit based on information and belief alone, it is invalid.*—If it was intended by §31 of the Prohibition Law of 1925 (§2746 Burns 1926) to declare that an affidavit embodying the allegation that an affiant has reason to believe and does believe that there is intoxicating liquor or a still or distilling apparatus on certain described premises is alone sufficient to show probable cause for issuing a search warrant and to warrant a magistrate to issue such warrant without further evidence, the legislature exceeded its power, and the section is invalid.    **p. 328.**

13. SEARCHES AND SEIZURES.—*Affidavit on information and belief insufficient basis for finding of probable cause.*—A search warrant issued on an affidavit of mere belief, or on information and belief, is insufficient upon which to base a finding of probable cause for issuing a search warrant. p. 329.

14. SEARCHES AND SEIZURES.—*Search warrant issued on affidavit on information and belief held void.*—A search warrant, issued without other evidence of probable cause than an affidavit on information and belief that the accused had in his possession intoxicating liquor, a still and other property for the manufacture of intoxicating liquor, was void because it was not issued upon probable cause in violation of Art. 1, §11 of the Constitution of Indiana (§63 Burns 1926). p. 337.

15. CRIMINAL LAW.—*Information. obtained by illegal search warrant inadmissible in evidence and should be suppressed.*—Where a search and seizure under search warrant was illegal because the warrant was not issued on probable cause, and therefore unreasonable, the information obtained and the articles seized by means of such search were inadmissible in evidence over objection of the defendant and the court erred in overruling his motion to suppress the evidence. p. 337.

From Henry Circuit Court; *John W. Craig,* Special Judge.

James Wallace was convicted of unlawful possession of intoxicating liquor and the control and use of a still and distilling apparatus for the manufacture of intoxicating liquor, and he appeals. *Reversed.*

*Paul Brown* and *John F. Robbins,* for appellant.

*Arthur L. Gilliom,* Attorney-General and *Edward J. Lennon, Jr.,* Deputy Attorney-General, for the State.

TRAVIS, C. J.—One alleged error is presented to sustain this appeal, based upon the action of the trial court overruling appellant's verified motion to quash the search warrant, the return of the officer of the service of the search warrant, and the affidavit upon which the search warrant is predicated.

Appellant is charged by an affidavit approved by the prosecuting attorney, in one count, with the unlawful and felonious possession and control and use of a certain still and distilling apparatus for the unlawful manufac-

ture of intoxicating liquor. Acts 1925, ch. 48, §6, §2719 Burns 1926.

Before arraignment, appellant filed his verified motion to quash the search warrant, the return thereon, and the affidavit for the search warrant, and that all evidence of the finding and seizure of any alleged intoxicating liquor or any still or distilling apparatus, or mash, or any property whatever, be suppressed, and not be permitted to be used by the state against the defendant, and that the testimony of the officers who served the search warrant, or who were present when such warrant was served, and each of them, with respect to what they, or any of them, observed, heard, learned or did, while making said search and seizure, be suppressed, and that none of such facts or information thus obtained be permitted to be introduced in evidence by the state against the dedefendant in said cause. The state answered appellant's verified motion to quash the writ for the search by general denial. The issue thus formed was submitted to the court, and evidence was introduced both in support of the verified motion and the general denial. The court overruled appellant's verified motion to quash the writ of search warrant, and thereafter appellant pleaded not guilty to the affidavit which charged the offense, and the matter was submitted to the court, trial had, which resulted in a finding by the court of guilty as charged and the court rendered judgment against him by fine of $100 and imprisonment in the Indiana State Prison for a period not less than one year and not more than five years.

The affidavit for the search warrant was sworn to before the prosecuting attorney and by the prosecuting attorney filed with the justice of the peace, who issued the search warrant. The affidavit, search warrant, and return thereon by the officer, are in words as follows:

"STATE OF INDIANA  } SS:
"COUNTY OF HENRY, }

"Comes now the undersigned affiant, who, upon his oath, says: that affiant has reason to believe and does believe that James Wallace has in his possession intoxicating liquor, being then and there sold, bartered and given away as beverage in violation of the laws of this State, and has in his possession stills, implements, devices and property kept for the purpose of the manufacture of intoxicating liquors, intended for use in violation of the laws of this State, at the following premises: The rooms and basement and outbuildings appurtenant thereto, used as a candy parlor and bakery, located at Number 1430 Broad Street, in the city of Newcastle, of said County and State.

"JAKE LOWE

"Subscribed and sworn to before me this 1st day of December, 1925.

"GEORGE R. JEFFREY,<br>"Prosecuting Attorney.

## SEARCH WARRANT

"STATE OF INDIANA  } SS:
"COUNTY OF HENRY, }

"To the sheriff of Henry County or any Constable of said County, or to the Chief of Police and any member of the Police Force of the City of Newcastle, Indiana, Greeting:

"WHEREAS, There has been filed with me an affidavit of which the following is a copy, to wit:

"STATE OF INDIANA  } SS:
"COUNTY OF HENRY, }

"Comes now the undersigned affiant, who, upon his oath says: that affiant has reason to believe and does believe that James Wallace has in his possession intoxicating liquor, being then and there sold, bartered and given away as a beverage in

violation of the laws of this State, and has in his possession stills, implements, devices and property kept for the purpose of the manufacture of intoxicating liquors, intended for use in violation of the laws of this State, at the following premises.

"The rooms and basement and outbuildings appurtenant thereto, used as a candy parlor and bakery, located at Number 1430 Broad Street in the City of Newcastle, of said County and State.

"JAKE LOWE.

"Subscribed and sworn to before me this 1st day of December, 1925.

"GEORGE R. JEFFREY,
"Prosecuting Attorney.

"You are therefore commanded, in the name of the State of Indiana, with the necessary and proper assistance, in the daytime or in the nighttime, to enter into the premises described in said affidavit and there diligently search for the said intoxicating liquors and said stills, devices and property kept for the purpose of manufacturing intoxicating liquors, as aforesaid, and that you bring the same or any part thereof found on such search, together with the vessels in which such intoxicating liquors are contained, and all the implements, fixtures, devices and property used or kept for such illegal selling, bartering, giving away or manufacture of such intoxicating liquors, and all books, papers, bills, documents and letters relating to such liquors, implements, devices and supplies, and manufacture of such liquors forthwith before me, at my office, to be disposed of according to law.

"Given under my hand and seal of the Court this......day of December, 1925.

"CHARLES R. SWAIN,
"Justice of the Peace.

## RETURN

"This writ came to hand this 1st day of December, 1925, and I served the same upon the said

James Wallace by and by entering upon the premises herein described and there making diligent search for intoxicating liquor, and for stills and implements intended to be used in the unlawful manufacture of intoxicating liquor, as described herein; and by virtue of this writ seized the following, viz: One still and distilling apparatus, 90 gallons of mash, and 18 gallons of intoxicating liquor, and now have and hold the same subject to the further order of the court.

"CHARLES ZORNES,
"Officer Serving Warrant."

Appellant's verified motion to quash the search warrant alleges: "that thereupon (upon the delivery of the affidavit for the search warrant to the justice of the peace) at once upon so receiving said affidavit so made, and without further legal proceeding or proof to show probable cause, and without any hearing had or any evidence heard, and solely by virtue of said alleged affidavit  .  .  . , such justice of the peace proceeded to and did, at once on said day issue, on said alleged affidavit, an alleged search warrant," directed to an officer commanding him to search the premises described in said alleged affidavit upon which the search warrant was issued, for intoxicating liquors, stills, devices, and property, so alleged to be kept for the purpose of manufacturing liquors.

Upon the issue formed by the state's answer in general denial to appellant's verified motion to quash and suppress, the state, to support the search warrant, presented the evidence by the testimony of the policeman who made the affidavit for the search warrant; the affidavit was presented to him for signature by the prosecuting attorney, who, immediately after the officer signed it and took the oath before the prosecuting attorney, turned the affidavit over to the prosecuting attorney, all of which occurred at his desk at police headquarters; and

that he, the policeman, could not say that the defendant had a still, but that a short time before that day he had walked past defendant's bakery and smelled an odor which he described as like the odor coming from "swill." The justice of the peace, as a witness at the hearing upon appellant's verified motion to quash the writ for search and seizure testified that the affidavit for the writ was presented to him by the prosecuting attorney, and that, after it was so presented to him, he issued a search warrant based upon it, and after placing the affidavit on file and issuing a search warrant, he delivered the search warrant to the prosecuting attorney, and that he did not know what the prosecuting attorney did with it, but after a few days the search warrant was returned to him, and had the return of the officer upon it, and that it had been in his possession ever since.

The appellant presented to the trial court a memorandum, which was a part of his verified motion to quash the search warrant, giving the reasons in support of his said verified motion. The reasons of importance here are:

A. (5) "That said affidavit contained no showing of probable cause for believing that the defendant unlawfully possessed intoxicating liquors, or stills, implements, devices, or property kept for the purpose of manufacturing intoxicating liquors, intended for use in violation of the laws of the state."

B. (6) "That said affidavit did not state or allege any grounds or facts upon which the alleged belief of the affiant therein was based."

C. (7) "No evidence or facts are shown or alleged in said affidavit for search warrant on which the belief of the affiant therein was based, nor any facts alleged therein which show probable cause, for the issuance of said search warrant."

D. (8) "That said affidavit does not state facts sufficient to show probable cause for the issu-

ance of said search warrant as the law in such
cases requires."

E. (9) "That said search warrant was issued
without probable cause for the issuance thereof
under the law."

F. (10) "That no statement of facts or alleged
facts under oath or affirmation either written
or oral was made to or received by said justice
of the peace purporting to state ground or
reasons for or tending in any manner to show
probable cause for the issuance of said alleged
affidavit (search warrant)."

G. (11) "That no statement of any kind, sup-
ported by oath or affirmation, was made by
any person to said justice of the peace on the
subject of the issuance of said search warrant
prior to the issuance thereof, other than said
affidavit."

H. (12) "That no probable cause was shown or
established supported by oath or affirmation
before said justice of the peace for the issuance
of said search warrant prior to its issuance by
said justice."

I. (13) "That said justice of the peace had no
hearing of evidence on said affidavit and made
no finding of the existence of probable cause
for the issuance of said search warrant prior
to the issuance thereof."

Appellant presents his verified motion to quash the
search warrant and the hearing with the evidence upon
the issue made by the answer in general denial by the
state by special bill of exceptions.

Certain settled principles of law in relation to search
and seizure must enter into the decision of the question
which is presented by the alleged error predicated
1. upon the overruling of the motion to quash the
search warrant. The action of the court or magis-
trate, in determining the question of the existence of
*probable cause,* upon which to base the issuing of a search
warrant, is judicial. *In re Rule of Court* (1877), 3 Woods

502, 20 Fed. Cas. 1336; *Commonwealth* v. *Intoxicating Liquor* (1869), 103 Mass. 448; *Commonwealth* v. *Schwartz* (1923), 82 Pa. Super. Ct. 369, 375; *Chipman* v. *Bates* (1843), 15 Vt. 51, 40 Am. Dec. 663; *People* v. *Prall* (1925), 314 Ill. 518, 145 N. E. 610; *Zimmerman* v. *Bedford* (1922), 134 Va. 787, 115 S. E. 362; *State* v. *Lock* (1924), 302 Mo. 400, 259 S. W. 116; *Craven* v. *State* (1923), 148 Tenn. 517, 256 S. W. 431; *Kinseley* v. *Ham* (1913), 39 Okla. 623, 136 Pac. 427, 49 L. R. A. (N. S.) 770; *Veeder* v. *United States* (1918), 252 Fed. 414; *Locknane* v. *United States* (1924), 2 Fed. (2d) 427; *Money* v. *Leach* (1765), 3 Burr. (Eng.) 1742, 1766; Black, Constitutional Law 612; 24 R. C. L. 707.

The existence of *probable cause,* within the meaning of the Constitution, is not for ministerial determina-

2.    tion.    *Veeder* v. *United States, supra; Smoot* v. *State* (1925), 160 Ga. 714, 128 S. E. 909, 41 A. L. R. 1533.

The affidavit or the statement under oath or affirmation, in support of probable cause, must bear the countenance of truth, which is so infallible, that either

3.    an action for damages, or a criminal charge of perjury may be legally predicated thereon, if such statement is untrue.    *Ex parte Burford* (1806), 3 Cranch 448, 2 L. Ed. 495; *Veeder* v. *United States, supra; State* v. *Quartier* (1925), 114 Ore. 657, 236 Pac. 746.

All present authority to issue a search warrant, and the exercise of authority thereunder, results from written law, either the Constitution or the statutes, or

4.    both.    Art. 1, §11, Constitution of Indiana; §8356y Burns' Supp. 1921.

The search warrant, and the statements upon oath or affirmation upon which *probable cause* is based, must conform strictly to the Constitution and the valid

5.    statutory laws which permit a search and seizure. *United States* v. *Rembert* (1922), 284 Fed. 996; *White* v. *Wager* (1900), 185 Ill. 195, 57 N. E. 26, 50

L. R. A. 60; *Reed* v. *Rice* (1829), 2 Marsh. (Ky.) 44, 19 Am. Dec. 122.

Statutes which relate to search and seizure must be strictly construed in favor of the constitutional right of the people. *Guenther* v. *Day* (1856), 6 Gray 6. (Mass.) 490; *Leonard* v. *United States* (1925), 6 Fed. (2nd) 353, 355;

The constitutional guaranty against unreasonable search and seizure must receive a liberal construction, in its application to guarantee such right to the 7. people. *Gouled* v. *United States* (1921), 255 U. S. 298, 304, 41 Sup. Ct. 261, 65 L. Ed. 647; *Byars* v. *United States* (1926), 273 U. S. 28, 47 Sup. Ct. 248, 71 L. Ed. 520; *Flum* v. *State* (1923), 193 Ind. 585, 141 N. E. 353; *Boyd* v. *United States* (1886), 116 U. S. 616, 635, 6 Sup. Ct. 524, 29 L. Ed. 746.

In executing a search warrant, there must be a strict compliance with whatever formalities are required 8. by law. *United States* v. *Borkowski* (1920), 268 Fed. 408; *Reed* v. *Rice, supra; Flum* v. *State, supra.*

Evidence secured by unreasonable search and seizure may not be admitted against the accused over objection. *Flum* v. *State, supra; State* v. *Lock, supra.*

9, 10. All searches and seizures executed in violation of law are unreasonable. *Flum* v. *State, supra.*

The major proposition of law asserted by appellant is that the search warrant was illegally issued, because the warrant did not issue upon probable cause, 11. supported by oath or affirmation, as required by the Constitution (Art. 1, §11, Constitution, §56 Burns 1926); the point being, that no facts were alleged in the affidavit which was filed with the magistrate, or evidence heard, to present or support probable cause, upon which the search warrant could legally be issued. It appears as an alleged fact in appellant's motion to quash the writ, that the writ was based wholly

upon the affidavit of the officer, and not upon any other additional facts or information whatever. The proposition is based upon the motion to quash the writ, and is presented by the bill of exception. The appellee assumed the burden upon the issue presented by the general denial of appellant's verified motion to quash the writ for the search, to sustain the writ for the search. *State* v. *Blumenstein* (1925), 186 Wis. 428, 432, 202 N. W. 684; *Wells* v. *State* (1924), 135 Miss. 764, 100 So. 674; *Meno* v. *State* (1925), 197 Ind. 16, 148 N. E. 420.

The question of the showing of probable cause, upon which warrants for arrest, and search and seizure, shall issue, upon the allegation or statement, under oath or affirmation, "has reason to believe and does believe" or "is reliably informed and believes"—which amount to the same in law—has been very frequently discussed and determined by the courts of last resort in many of the states, and by the several courts of the United States, in very recent years. The further discussion of any length in this opinion upon the point is unnecessary, in order to add to or supplement the composite, which results from so great a number of judicial opinions of these courts, nearly all of which are of one mind.

The form of affidavit prescribed by the legislature is:

"If any person shall make an affidavit before any mayor, justice of the peace or judge of any court that such affiant has reason to believe, and 12. does believe, that on any described or designated premises or tract of land, there is intoxicating liquor or a still or distilling apparatus which is being sold, bartered, used, or given away, or possessed, in violation of the laws of this state, such justice of the peace, mayor or judge shall issue his warrant to any officer having power to serve criminal processes, and cause the premises designated in such affidavit to be searched," etc. Acts 1925 p. 144, §31, §2746 Burns 1926.

If it was intended by this statute to declare that an allegation in the affidavit, such as therein prescribed, shall be sufficient to show probable cause, and that an affidavit embodying such allegation alone is proof sufficient to warrant the magistrate to determine the question of probable cause, then, in our opinion, the legislature, in that respect, exceeded its power, although it may make a certain act or series of acts *prima facie* evidence of a fact, yet it is not within its province to say to any judicial officer that when he has heard proof of certain facts, the evidence thus adduced before him shall constitute conclusive proof of the fact in issue in the trial of the cause before him.

The axiomatic principle of law concerning the issuing of a search warrant that the matter of consideration of the subject and determination, either for or against the affidavit, and showing upon oath or affirmation in its support of *probable cause*, is judicial, and in no sense ministerial or for decision by the maker of the affidavit or witness under oath or affirmation, determines the question at bar.

The affidavit before the court is the sole and only proof in support of *probable cause* upon which the search warrant was to issue, as is conclusively shown by the motion to quash the writ. The averment by affiant in the affidavit "that he has reason to believe and does believe" that appellant "has in his possession certain intoxicating liquor," etc., is not an averment of any fact from which the existence of *probable cause* could be determined. At least such averment is hearsay evidence only. It is the conclusion of affiant— his opinion—based upon his "reason to believe." If this be the determining factor, then the magistrate who shall issue the warrant, performs such act ministerially, not judicially, for the magistrate had no conclusion to reach, no finding of *probable cause* to make. The statute which provides that "an affidavit . . .

that such affiant has reason to believe and does believe" is good as far as it goes, but it stops short of *probable cause*. *United States* v. *Pitotto* (1920), 267 Fed. 603, and cases there cited.

The averment in the affidavit amounts solely to the possibility, not the probability, that affiant's belief will prove to be a fact, rather than a belief, upon the execution of the warrant, and not before. The affidavit, if untrue, would not subject affiant to prosecution for perjury, unless it can be proved that affiant, at the time he made the affidavit, knew that there was no intoxicating liquor at the place described. *United States* v. *Keleher* (1924), 2 Fed. (2nd) 934; *State* v. *Lock, supra*.

The whole case upon which a search warrant issues must be made by him who prays for such writ. The judicial officer before whom an application for a search warrant is filed must exercise his judicial power to determine whether or not a warrant shall issue; such judicial function can be moved only by the facts brought before him, which are under oath or affirmation. A warrant to search and seize, which follows upon a statement based solely upon the belief of the affiant, rests upon the reasoning of the affiant, based upon the secret facts of which he may have knowledge; and the conclusion which results from such reasoning is affiant's, not that of the judicial officer. The judicial process to ascertain probable cause is then transferred from the judicial officer to the affiant. The Constitution permits no such thing.

The court acknowledges the erudite pronouncements of those sages of the law, that, "It is not fit that the receiving or judging of the information should be left to the discretion of the officer. The magistrate ought to judge; and should give certain directions to the officer," by Lord Mansfield in *Money* v. *Leach, supra;* and that in holding void an affidavit made as a foundation for a warrant by a person who did not have personal knowl-

edge of the facts, that, "If the charge against him was malicious, or grounded on perjury, whom could he sue for the malicious prosecution? or whom could he indict for perjury?" by Mr. Chief Justice Marshall, in *Ex parte Burford, supra*; and that in considering a statute which provides, as stated in the court's opinion, that: "If the three persons *state their belief* that any spirituous liquors are kept or deposited and intended for sale, in any store, shop or warehouse, or in any steamboat or other vessel, or in any vehicle, or in any building or place, then the warrant shall issue, and the sheriff or constable shall proceed to search the premises   .   .   .  ," the court says:   "If it be said that the act provides for as much certainty in the description of the articles to be searched for and seized, and in the definition and limitation of the officer's powers, as the nature of the case will admit of; that the complainants cannot know with certainty, before search is made, that spirits are deposited in the place described, or are intended for sale, and can only state their belief; and that neither the complainants nor the magistrate can know, before search, who is the owner, or has the custody, or intends to sell, and therefore cannot name him; and that it is impossible for the complainants or for the searching officer to distinguish what part of the liquors found is intended for sale, and that that must be a subject of inquiry before the magistrate afterwards; the answer seems to us to be obvious, that if these modes of accomplishing a laudable purpose, and of carrying into effect a good and wholesome law, cannot be pursued without a violation of the constitution, they can not be pursued at all, and other means must be devised, not open to such objection," by Mr. Justice Shaw, in *Fisher* v. *McGirr* (1854), 1 Gray (Mass.) 1, 61 Am. Dec. 391; and that, "One cause of this evil (arrest of person without probable cause) seems to be the fact that warrants are issued upon the affidavit of

some officer, who, upon the relation of others whose names are not disclosed, swears that, upon information, he has reason to believe, and does believe, the person charged has committed the offense charged. . . . Such an affidavit does not meet the requirements of the constitution, which, by the fourth article of the amendments, declares that the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated. . . . It is plain from this fundamental enunciation, as well as from the books of authority on criminal matters in the common law, that the probable cause referred to, and which must be supported by oath or affirmation, must be submitted to the committing magistrate himself, and not merely to an official accuser, so that he, the magistrate, may exercise his own judgment on the sufficiency of the ground shown for believing the accused person guilty; . . . In other words, the magistrate ought to have before him the oath of the real accuser, presented either in the form of an affidavit, or taken down by himself by personal examination, exhibiting the facts on which the charge is based and on which the belief or suspicion of guilt is founded. The magistrate can then judge for himself, and not trust to the judgment of another, whether sufficient and probable cause exists for issuing a warrant. It is possible that by exercising this degree of caution, some guilty persons may escape public prosecution, but it is better that some guilty ones should escape than that many innocent persons should be subjected to the expense and disgrace attendant upon being arrested upon a criminal charge, and this was undoubtedly the beneficent reason upon which the constitutional provision referred to was founded"; by Mr. Justice Bradley, *In the Matter of a Rule of Court, supra,* and that: "No search warrant shall be issued unless the judge has first been furnished with facts under

oath—not suspicions, beliefs, or surmises—but facts which, when the law is properly applied to them, tend to establish the necessary legal conclusion, or facts which, when the law is properly applied to them, tend to establish probable cause for believing that the legal conclusion is right. The inviolability of the accused's home is to be determined by the facts, not by rumor, suspicion, or guesswork. If the facts afford the legal basis for the search warrant, the accused must take the consequences. But equally there must be consequences for the accuser to face. If the sworn accusation is based on fiction, the accuser must take the chance of punishment for perjury. Hence the necessity of a sworn statement of facts, because one cannot be convicted of perjury for having a belief, though the belief be utterly unfounded in fact and law," by Judge Francis E. Baker, *Veeder* v. *United States, supra;* and that: "The efforts of the courts and their officials to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those great principles established by years of endeavor and suffering which have resulted in their embodiment in the fundamental law of the land"; by Mr. Justice Day, *Weeks* v. *United States* (1914), 232 U. S. 383, 393, 34 Sup. Ct. 341, 344, 58 L. Ed. 652, L. R. A. 1915B 834, Ann. Cas. 1915C 1177; and that: "The affidavit on which the warrant was issued set forth no facts from which the existence of probable cause could be determined; nor did the warrant itself recite the existence of such cause. There was no recital in the warrant that the officer who issued it found or determined there was probable cause, further than the mere statement that some one had declared under oath that he had good reason to believe, and did believe, the accused was violating the law. It is true that §3462 Rev. Stat. (U. S. Compiled Stat. 1901, p. 2283) [1] author-

---

[1] "The several judges of the circuit and district courts of the United States, and commissioners of the circuit courts, may, within

izes a search warrant to be issued upon such an affidavit, but we think that all the requisites are not there expressed. This was also the view of the Attorney General in an opinion delivered June 19, 1903 (24 Ops. Attys. Gen. 685, 688). The oath in writing should state the facts from which the officer issuing the warrant may determine the existence of probable cause, or there should be a hearing by him with that purpose in view. The immunity guaranteed by the constitution should not be lightly set aside by a mere general declaration of a non-judicial officer that he has reason to believe and does believe, etc. The undisclosed reason may fall far short of probable cause," by Hook, Circuit Judge, *Ripper* v. *United States* (1910), 178 Fed. 24, 26; and that: "The section providing for the issue of these search warrants" (§3462 Rev. Stat. 1901, p. 2283, *supra*) "does not state all of that which must be stated in the application therefor. The Fourth Amendment to the Constitution provides that 'no warrant shall issue, but upon probable cause, supported on oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.' The determination of the question whether this requirement and those of the section referred to (§21, Act of May 28, 1896, 29 Stat. 184) have been met, and whether the warrant should issue in a particular case, is a highly responsible and important duty"; . . . by Mr. Philander C. Knox, Attorney General, 24 Ops. Attys. Gen. 685, 688. The opinion in the case of *Ripper* v. *United States, supra,* shows that that case was much like the case at bar. Ripper was convicted of violations of Act of August 2, 1886, ch. 840, 24 Stat. at L. 209 (U. S. Comp. Stat. 1901, p. 2228, §13, p.

their respective jurisdictions, issue a search-warrant, authorizing any internal-revenue officer to search any premises within the same, if such officer makes oath in writing that he has reason to believe, and does believe, that a fraud upon the revenue has been or is being committed upon or by the use of the said premises."

2232) commonly known as the "Oleomargarine Act."
Complaint was made on appeal to the Circuit Court of
Appeals for the eighth circuit that the trial court erred
in admitting the testimony of revenue officers as to what
they discovered in the house of accused, because they
gained admission by means of a void search warrant.
A revenue agent made affidavit before a United States
commissioner that he had good reason to believe, and
did believe, that the accused was unlawfully in the busi-
ness of manufacturing oleomargarine. The commis-
sioner issued the warrant upon the showing, as made by
the affidavit.    The affidavit in the Ripper case, in so
far as the question of "reason to believe and does be-
lieve" has to do with the decision of the question, is the
same as the affidavit in the case at bar, only the one in-
volves oleomargarine, and the other intoxicating liquor,
and stills, etc., for the manufacture of intoxicating
liquor.

Concerning the argument before the superior court
in Boston in 1761, by James Otis, Esquire, in the case of
*Gray* v. *Paxton* (1761), Quincey's Mass. Rep. 541,
John Adams, who listened to the argument, said of the
merits of this renowned forensic effort, that, "Then and
there, the child Independence was born," and reports
the speech, in relation to the unwarranted invasion of
one's person, house or effects, of which the following
excerpt is apt here: "Now one of the most essential
branches of English liberty is the freedom of one's house.
A man's house is his castle; and whilst he is quiet, he is
as well guarded as a prince in his castle.   .   .   .
Every man, merely natural was an independent sover-
eign, subject to no law, but the law written on his heart,
and revealed to him by his Maker, in the constitution of
his nature, and the inspiration of his understanding and
his conscience. His right to his life, his liberty, no
created being could rightfully contest. Nor was his

right to his property less incontestible. . . . These
rights are derived only from nature, and the author of
nature; they are inherent, inalienable, and indefeasable
by any laws, pacts, contracts, covenants, or stipulations
which man could devise. . . . These principles and
these rights were wrought into the English Constitution,
as fundamental laws. . . . The security of these
rights of life, liberty, and property, had been the object
of all those struggles against arbitrary power, temporal
and spiritual, civil and political, military and ecclesias-
tical, in every age." Life of Otis (Tudor 1823) 61-71;
VIII World's Best Orations, 3128.

The consensus of judicial opinion, where this ques-
tion has been thoroughly considered upon principle and
sound reasoning, is, that a search warrant issued upon
an affidavit of mere belief, or on information and belief,
is insufficient upon which to base a finding of probable
cause, and its issuance under such circumstances would
be without warrant of law. *State* v. *Derry* (1908), 171
Ind. 18, 24, 131 Am. St. 237; *Ex parte Dimmig* (1887),
74 Cal. 164, 15 Pac. 619; *Lippman* v. *People* (1898), 175
Ill. 101, 51 N. E. 872; *People* v. *Heffron* (1884), 53 Mich.
527, 19 N. W. 170; *State* v. *Patterson* (1904), 13 N. D. 70,
99 N. W. 67; *Wells* v. *State* (1924), 135 Miss. 764, 100
So. 674; *State* v. *Patterson* (1920), 27 Wyoming 185, 194
Pac. 342, 13 A. L. R. 1284; *Veeder* v. *United States, supra;*
*United States* v. *Rykowshi* (1920), 267 Fed. 866; *People*
v. *Effelberg* (1922), 220 Mich. 528, 190 N. W. 727;
*Smoot* v. *State, supra; Lochnane* v. *United States, supra;*
*Johnston* v. *United States* (1898), 87 Fed. 187, 30 C. C. A.
612, 58 U. S. App. 313, 11 Am. Crim. Rep. 349; *Byars* v.
*United States, supra; People* v. *Kempner* (1913), 208
N. Y. 16, 101 N. E. 794, 46 L. R. A. (N. S.) 970, 975;
Ann. Cas. 1914B 169; *Swart* v. *Kimball* (1880), 43 Mich.
443, 451, 5 N. W. 635; *State* v. *Lock, supra; United States*
v. *Various Documents* (1921), 278 Fed. 944; *United*

*States* v. *Pitotto* (1920), 267 Fed. 603; *Wagner* v. *United States* (1925), 8 Fed. (2d) 581; *Reg.* v. *Walker* (1887) 13 Ont. Rep. (Can.) 83; *United States* v. *Tureaud* (1884), 20 Fed. 621; 24 R. C. L. 708; 6 Words & Phrases (1st. Series) 5618-5627; 16 C. J. 292;

The Constitution is imperious. We turn to it as a refuge to protect our very social and political life, instead of disobeying its wholesome commands. It is for all the people. The mantle of its protection falls without discrimination, and without respect of persons, upon all. The benevolence of its power estops him who would cross the threshold of those under suspicion of guilt, as well as of the innocent, unless by virtue of probable cause therefor, judicially determined. To secure a search warrant by means not warranted by the Constitution, according to its plain language, is to evade the law. The law knows no evasion.

Appellant does not challenge the constitutionality of the section of the statute (§25, ch. 4, Acts 1917), but contends that the constitutional rights of a citizen to be secure in his house and effects against unreasonable searches and seizure have been violated. It follows from the position already shown to have been taken by the court, that it is of the opinion that the search warrant is void because it was not issued upon probable cause, and violates Art. 1, §11, of the Constitution of Indiana.

Because the search and seizure under the search warrant were illegal, and therefore unreasonable, the knowledge learned and the effects seized by means of the execution of the illegal warrant, may not be admitted in evidence upon the trial of the accused over his objection. The ruling of the court overruling appellant's verified motion to quash the writ and suppress the evidence, was error. *Flum* v. *State, supra;*

*Weeks* v. *United States, supra; State* v. *Lock, supra; Boyd*
v. *United States, supra; Silverthorne Lumber Co.* v. *United
States* (1920), 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed.
319; *Youman* v. *Commonwealth* (1920), 189 Ky. 152,
224 S. W. 860, 13 A. L. R. 1903.

In oral argument, it was contended by counsel for the
appellee that the search warrant was valid although
founded upon an affidavit based solely upon the informa-
tion and belief of the affiant, there being no other evi-
dence in any form in support of the affiant's information
and belief, and that therefore the evidence sought to be
excluded was admissible.   This contention was based
upon the authority of *Rose* v. *State* (1909), 171 Ind. 662,
17 Ann. Cas. 228.   That was not a criminal case, but a
case *in rem* only.   The question of the admissibility of
evidence because of an alleged void search warrant was
not then before the court.   The holding in the opinion
of the Rose case is nothing more than that the affidavit
then under consideration was good to the extent of its
allegations, and thereby did not offend the Constitution.
To this extent, it is similar to the opinion in the case of
*United States* v. *Pitotto, supra,* and also the opinion of
Attorney General Philander C. Knox, *supra,* that the
statute does not state all that must be stated; and either
that the showing (by affidavit) should state pertinent
facts sufficient to support a judicial finding of probable
cause to issue the warrant, or that such showing should
be supplemented by legal evidence presented in a hearing
with that purpose in view.   It is unnecessary to decide
here and now whether the decision upon the question
of the sufficiency of the affidavit for the search warrant
in the Rose case was correct or incorrect, inasmuch
as the question arose in a different manner than in the
case at bar, and is not in conflict with the question now
presented and decided.   The question in the instant case
is the admissibility of evidence presented by an alleged

void search warrant to sustain an entirely different proposition from that before the court in the Rose case, thus clearly distinguishing that case from the one at bar. If the statements in the opinion in the Rose case might lead to the belief that the decision in that case controls the decision of the legal question involved in the case at bar, it must be and is disapproved. . The trend of judicial opinion concerning the very question here for decision, generally adopted by our federal courts and the courts of the different states, approves the rule that evidence is not legally admissible in the trial of a criminal case when knowledge of the same is gained by virtue of a search warrant which is based only and solely upon a statutory affidavit which provides that such affidavit may be made upon information and belief, without stating any facts upon which such information and belief are founded.

For the error committed in overruling appellant's motion to quash the search warrant and the return thereto by the officer, the judgment of the Henry Circuit Court must be reversed, and it is so ordered.

The cause is remanded to the trial court, and it is ordered to sustain appellant's motion to quash the search warrant and the return thereto, and suppress the evidence learned or obtained thereby, and evidence of the things seized, and to sustain appellant's motion for a new trial.

Martin and Gemmill, J. J., dissent with an opinion.

### DISSENTING OPINION.

MARTIN and GEMMILL, JJ.—The appellant is admittedly guilty of possessing, in violation of the law, a still or distilling apparatus and of using the same for the unlawful manufacture of intoxicating liquor.

The record shows that he had for his place of business a bakery at 1430 Broad street in the city of Newcastle,

Indiana, and that his working hours were from a little after midnight until eight or nine a. m. He had bakery equipment on the ground floor and a very elaborate distilling outfit in the basement, used for the unlawful manufacture of intoxicating liquor. The still was installed inside an old saloon refrigerator eight by twelve feet in size and six feet high. The return to the search warrant showed "1 still and distilling apparatus (which constitute Exhibits 1 to 24), 90 gallons of mash and 18 gallons of intoxicating liquor," and the officers testified that there were three barrels of mash (fifty to sixty gallon barrels) which were warm and in the process of fermentation. A water pipe ran down from the ground floor and supplied water for the cooling process of condensation, and other equipment consisted in part of coils, pipes, rubber hose, funnels, chemists' measuring glass, alcohol testing thermometer, yeast, barrels, jugs, kegs, buckets, earthenware jars, bottles, a bag of one-half inch corks, and jugs of white mule whisky, brandy and alcohol.

We do not believe that any of appellant's constitutional rights have been invaded but, on the contrary, believe that he was given a fair trial, which was free from error. He offered no evidence in dispute of the facts proved by the state and relies solely on the alleged invalidity of a search which we believe was in all things sufficient. He was found guilty and was fined and sentenced by the court to imprisonment, and we respectfully dissent from the decision of this court reversing the judgment.

The court in its opinion announces two radical changes in important parts of the intoxicating liquor law and overrules two well-settled rules of law that have prevailed in Indiana for many years. We cannot agree with the other members of the court in making these changes in the law, for the reasons hereinafter set out.

The first of the changes is that the burden of proof is upon the state to establish the validity and legality of

the search warrant rather than upon the defendant to establish its invalidity and illegality. The court says: "The appellee assumed the burden upon the issue presented by the general denial of appellant's verified motion to quash the writ for the search, to sustain the writ for the search."

If this is intended to be a statement of the record, it is erroneous, because the record shows that thereupon "the defendant (appellant) to maintain and support the issues in his behalf gave, offered and introduced the following evidence . . .," and after the record notation "defendant rests," the state introduced its evidence. If it is intended to be a statement of the law, we believe that it is unsupported either by reason or by precedent, and an examination of the three cases cited to support the proposition shows that they do not so hold.

While the court, in *State* v. *Blumenstein* (1925), 186 Wis. 428, 432, said: "It devolved upon the State, before the warrant could be introduced in evidence, to show the constitutional and statutory requisites had been complied with," the court held that the recital in the search warrant that the justice was "satisfied that there was reasonable cause" for the belief that defendant was violating the law, was a sufficient finding of probable cause; and *that, independent of such recital, the issuance of the warrant itself was equivalent to a formal adjudication of probable cause.* The case of *Wells* v. *State* (1924), 135 Miss. 764, 100 So. 674, merely held that where evidence obtained by a search warrant is offered and objected to and a demand made that the affidavit and warrant be produced before the evidence is received, the affidavit and warrant must be produced or its loss proved, or proof of a waiver at the time of the search be shown, before the evidence is admissible. No question as to the sufficiency or validity of the affidavit or search warrant was raised in that case. In the third case cited,

*Meno* v. *State* (1925), 197 Ind. 16, 148 N. E. 420, it was said: "The attack here is not against the search warrant; there was not a motion to quash the writ." Citation of the Blumenstein case was there made to support dictum to the effect that if the validity of the writ *had* been questioned, it was the duty of the state to show "that all the constitutional and statutory requirements had been complied with."

The law on this question of where the burden of proof lies, has heretofore been exactly opposite to the present decision of the court. Where a search warrant is regular upon its face, the burden to prove that it was irregularly issued is upon the defendant. Underhill, Criminal Evidence (3d ed.) §745, p. 1025. In *Morgan* v. *State* (1923), 194 Ind. 39, 141 N. E. 790, the appellant contended that a search and seizure had been made in violation of designated sections of the State and Federal Constitutions and this court said: "One who seeks affirmative relief on the ground that officers of the court have violated his constitutional rights in the execution of process has the burden of establishing facts from which it will affirmatively appear that his rights were invaded." In *Terrell* v. *Commonwealth* (1922), 196 Ky. 288, 244 S. W. 703, the court said: "While the information upon which a search warrant is issued must be furnished by affidavits of the character required by the Constitution and laws of the state . . . if the search warrant is regular and sufficient in its terms and upon its face and is issued by an officer authorized by law to issue such writ the same presumption respecting its validity must prevail that is required by law to be accorded any other process, civil or criminal, that is regular on its face; and if the information upon which it was issued is so defective or insufficient as to render the warrant invalid, that fact can and must be relied on by the defendant by way of defense, and be established by evidence introduced by

him, just as he must assume the burden of proving any other ground of defense upon which he relies." In *Flora, Trustee,* v. *Brown* (1923), 79 Ind. App. 454, 138 N. E. 767, the court said: "The presumption is that the officers are doing their duty, keeping within the law, and hence the party who challenges the act of an officer must show that there is no authority in the officer to do the act in question."

On the hearing on appellant's verified motion to suppress evidence and quash the affidavit for the search warrant, the warrant and the return, the appellant, to sustain his motion, introduced no evidence except his Exhibit No. 1, which was his said verified motion. The justice of the peace who issued the warrant, the prosecuting attorney, and the police officer who made the affidavit for the search warrant were all present, yet appellant, to make out his case in support of his motion, did not call upon them or upon any other witness to testify to any fact with reference to the question as to whether probable cause existed for the issuance of the warrant, but relied solely upon the affidavit of appellant.

The state, in resisting appellant's motion, proved by the justice of the peace, the prosecuting attorney and the desk sergeant of the police department who executed the affidavit, that the search warrant was issued regularly and in accordance with the statutory requirements.

The desk sergeant also testified that there had been a great deal of complaint at police headquarters about the appellant running a still and that he had walked past appellant's bakery on the sidewalk where there was an opening below, with some kind of covering, in which there was holes, and that he had smelled an odor like "swill." In describing this smell, he said that he had never before smelled liquor being made, but that it was the same kind of a smell or odor as when "we used to feed hogs and put bran and water in the trough until it

fermented." He said that he could not detect the odor in front of any of the other stores in the neighborhood, but only in front of the bakery, and that the policemen had had many conversations at police headquarters about what was going on and what this smell was, and that, after hearing what the officers said and after smelling it himself, he had a firm belief that the appellant was manufacturing intoxicating liquor. He thereupon made the affidavit for a search warrant.

We believe that the appellant had the burden to prove that probable cause for the issuance of the search warrant was not shown and that he failed to make such proof. He failed to offer any proof, although all the witnesses who knew the facts were present, to substantiate his allegation that the justice of the peace had nothing before him which constituted "probable cause" for the issuance of the search warrant. The circuit court heard the evidence and decided in favor of the state. This court, entirely overlooking the evidence which we have set out above, and notwithstanding the long-established rule that it will not undertake to weigh conflicting evidence, says: "The affidavit before the court is the sole and only proof in support of probable cause upon which the search warrant was to issue, as is conclusively shown by the motion to quash the writ." It considers as "conclusive" the matter stated in the verified motion of this illicit manufacturer of liquor, although the matter set forth in the motion can only be stated by him on his information and surmise, and disregards the evidence we have referred to.

Because of the allegations in appellant's motion, the court attempts to and does, in effect, say that the justice of the peace did not have sufficient information in his mind to convince him that there was "probable cause" for the search. The affidavit for the search warrant was made by a police officer to whom complaint

had been made and who had made a personal investigation and smelled the moonshining process, it was in proper form according to the statute and the justice of the peace, acting in his judicial capacity, issued the search warrant. The subsequent finding of a still and at least ninety gallons of mash in the process of being made into whisky certainly confirms the fact that the justice of the peace was correct in his judicial determination that there was probable cause.

It seems to us that the judicial proceeding of the issuing magistrate—the issuance of a search warrant regular in all its respects and complying with the exact wording of the statute ought not to be open to collateral attack in the circuit court, and that, having been there attacked and sustained on the controverted issue of fact, there is no basis for this appeal.

In the prevailing opinion, a number of cases are cited to establish the proposition that "the action of the court or magistrate, in determining the question of the existence of probable cause, upon which to base the issuing of a search warrant, is judicial." If that be true, there was a judicial determination by the justice of the peace that the facts set forth in the affidavit show that "probable cause" existed for the search, and that determination cannot be collaterally attacked.

"The issuance of a search warrant is a judicial finding by the officer issuing the warrant of the necessary facts set forth in the affidavit therefor. It is an adjudication by the officer issuing the warrant that there is probable cause for the search sought to be made." *Hendricks* v. *State* (1926), 144 Miss. 87, 109 So. 263; *Loeb* v. *State* (1923), 133 Miss. 883, 98 So. 449.

"When a magistrate issues a search warrant, he thereby declares that he is satisfied that probable cause exists." *Frihart* v. *State* (1926), 189 Wis. 622, 208 N. W. 469; *Bergman* v. *State* (1926), 189 Wis. 615, 208 N. W. 470.

*State* v. *Shelton* (1926), 314 Mo. 333, 284 S. W. 433, holds that it cannot be presumed, in a collateral inquiry on a motion to quash a search warrant issued by a justice of the peace on application of the prosecuting attorney and served by the sheriff, that such officers have failed to perform their duties properly and that a defendant may not thus impeach the search warrant by oral testimony. The court said:

"The contention of appellant, in respect to probable cause, if followed to its logical conclusion, would practically nullify the prohibition laws of the state relating to search warrants. If the sheriff actually sees the defendant unlawfully making intoxicating liquors, he needs no warrant to back him in enforcing the law. On the other hand, should the state be required to divulge to the defendant the evidence on which it relies for conviction? The real purpose of the law is to require the prosecuting attorney to state the facts, as he did in this case, and when the justice of the peace, whose duty it is to pass upon probable cause, has acted judicially and determined that the warrant should issue, his judgment and order should not be controverted by oral testimony. If the justice should refuse to issue the warrant, the state would be bound thereby. The defendant should likewise be concluded by the judgment of the justice of the peace."

In *Edmunds* v. *State* (1917), 199 Ala. 555, 74 So. 965, it was held that the weight of evidence to establish probable cause for issuing liquor search and seizure warrants under temperance acts cannot be reviewed upon the trial where the statute was substantially complied with. The court said:

"The ascertainment of probable cause for the issue of the writ involved the exercise of the judicial function. *Having acquired and exercised jurisdiction in the premises by taking the affidavit of a person,* and having issued the warrant substantially as required by the statute, the weight of the evidence

to establish probable cause could not be made the subject of inquiry, nor could the judgment in that regard of the issuing magistrate be made the subject of review on the trial of the cause." (Our italics.)

The law presumes the regularity of official acts and when the information is *prima facie* valid, it is held that the warrant was issued in conformity to law. *Burtch* v. *Zeuch* (1925), 200 Iowa 49, 202 N. W. 542; *People* v. *Cech* (1926), 236 Mich. 75, 209 N. W. 944.

Even in jurisdictions which hold (contrary to the Indiana rule announced in the Rose case, *infra*) that affidavits may not be made on "information and belief," it is held that in case of a collateral attack on a search warrant, it will be presumed that it was regularly issued. The court in *Burtch* v. *Zeuch, supra,* which was an action in contempt against a defendant who destroyed liquor during a search, said: "The information and warrant were *prima facie* valid. We will not presume that the issuing magistrate failed to respect constitutional and statutory provisions. On the contrary, we recognize the presumption that sworn public officials in the performance of their duties have legally acted."

The theory upon which the court holds that the affidavit of the police officer did not constitute "probable cause" for the justice of the peace to issue a search warrant, appears to be that the court believes the affidavit was not testimony nor evidence of the ultimate fact alleged therein. The Supreme Court of Kentucky, however, has recently held in a case involving the question of whether a wife who had made an affidavit for a search warrant had thereby "testified" against her husband, that such affidavit was "testimony." The court said: *"It was a judicial proceeding in which the judge was required to review the statements contained in the affidavit and determine* the existence of probable cause. We are therefore of the opinion that when the affidavit was made

by appellant's wife, and read by the judge as the basis of the search warrant, she testified against her husband within the meaning of the Code." (Our italics.)    *Osborne* v. *Commonwealth* (1926), 214 Ky. 84, 282 S. W. 762.

Briefly stated, the second of the radical changes in the law made by the decision of this case, being the principal point decided, is that the requirements of the search warrant statute, "If any person shall make an affidavit before any mayor, justice of the peace or judge of any court that such affiant has reason to believe, and does believe, that on any described or designated premises or tract of land, there is intoxicating liquor or a still or distilling apparatus which is being sold, bartered, used, or given away, or possessed, in violation of the laws of this state, such justice of the peace, mayor or judge shall issue his warrant to any officer having power to serve criminal processes, and cause the premises designated in such affidavit to be searched, as in other cases where such warrants are issued as now provided for by law," etc. Ch. 48, §31 Acts 1925 p. 157, §2746 Burns 1926, are not sufficient to comply with the constitutional provisions: "The rights of the people to be secure in their persons, houses, papers and effects against unreasonable search or seizure shall not be violated; and no warrant shall issue but upon probable cause; supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized."    Art. 1, §11, Constitution, §63 Burns 1926, that a search warrant shall not be issued "except upon probable cause"; and that, in order that a search warrant may legally be issued, it must affirmatively appear, as a part of the state's case, that the facts tending to establish the belief of the person who makes the affidavit that intoxi-

cating liquor or distilling apparatus exists on the premises described were presented to the issuing magistrate.[1]

A careful review of many cases, as well as an examination of the statutes dealing with this subject in every state in the Union, leads us to the conclusion that the majority of the court has been led into error by applying to our own law rules laid down by courts in other states where statutes defining search warrant procedure are entirely different from our own, and by disregarding the decided cases in Indiana and in all these states which have statutes similar to ours.

There are fifteen states which have statutes similar to ours: Colorado, Connecticut, Delaware, Iowa, Louisiana, Maine, Mississippi, Missouri, Nebraska, New Hampshire, Ohio, Texas, Vermont, Washington, and West Virginia, and their decided cases, as well as a number of cases from other states, some of which are briefly reviewed herein, *infra*, hold, as does the case of *Rose* v. *State* (1909), 171 Ind. 662, 87 N. E. 103, 17 Ann. Cases 228, that the procedure set out in our statute and used in the case at bar complies with the constitutional requirements, and that the rights of an owner of premises searched by authority of a warrant duly issued by a magistrate upon an affidavit on information and belief are not infringed. *Salley* v. *State* (1913), 9 Ala. App. 82, 64 So. 185;

---

[1] The prevailing opinion holds that the evidence was secured and taken under a search warrant not legally issued and that such evidence is therefore inadmissible in evidence. This is in accordance with the rule laid down by the later Federal cases and by a *minority* of the state courts, including *Indiana*. See authorities collected in 24 A. L. R. 1417 (1923) from Georgia, Indiana, Iowa, Kentucky, Mississippi, Tennessee, Vermont, Washington and West Virginia. The *majority* rule is that where there is nothing in the character of the article taken which affects its competency as evidence, the courts will not investigate the source from whence it comes or the means by which it is obtained and will admit it even though the search was not valid. See authorities collected in 24 A. L. R. p. 1411 (1923) from Alabama, Arkansas, California, Colorado, Connecticut, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, New Hampshire, New Mexico, New York, North Carolina, Oklahoma, Oregon, South

*Lowery* v. *Gridley* (1862), 30 Conn. 450; *Koch* v. *District Court* (1911), 150 Iowa 151, 129 N. W. 740; *State* v. *Doremus* (1915), 137 La. 266, 68 So. 605; *City of Shreveport* v. *Nejin* (1917), 140 La. 786, 73 So. 996; *State* v. *Nejin* (1917), 140 La. 793, 74 So. 103; *State* v. *Norris* (1926), 161 La. 988, 109 So. 787; *Commonwealth* v. *Certain Lottery Tickets* (1850), 5 Cush. (Mass.) 369; *State* v. *Hobbs* (1855), 39 Me. 212; *State* v. *Nowlan* (1874), 64 Me. 531; *State* v. *Plunkett* (1874), 64 Me. 534; *State* v. *Welch* (1887), 79 Me. 99; *State* v. *Mallett* (1923), 123 Me. 220, 122 Atl. 570; *State* v. *Breen* (1923), 123 Me. 562, 122 Atl. 571; *State* v. *Watson* (1923), 133 Miss. 796, 98 So. 241; *Loeb* v. *State* (1923), 133 Miss. 883, 98 So. 449; *Bufkin* v. *State* (1923), 134 Miss. 1, 98 So. 452; *City of Jackson* v. *Howard* (1924), 135 Miss. 102, 99 So. 497; *Hendricks* v. *State* (1926), 144 Miss. 87, 109 So. 263; *State* v. *Cobb* (1925), 309 Mo. 89, 273 S. W. 736; *State* v. *Hall* (1926), 312 Mo. 425, 278 S. W. 1028; *State* v. *Cockrum* (1925), 278 S. W. (Mo.) 700; *State* v. *Shelton* (1926), 314 Mo. 333, 284 S. W. 433; *Sharp* v. *State* (1901), 61 Nebr. 187, 85 N. W. 38; *Watson* v. *State* (1922), 109 Nebr. 43, 189 N. W. 620; *Ciano* v. *State* (1922), 105 Ohio St. 229, 137 N. E. 11; *Cochran* v. *State* (1922), 105 Ohio St. 541, 138 N. E. 51; *Rosanski* v. *State* (1922), 106 Ohio St. 442, 140 N. E. 370; *Commonwealth* v. *Schwartz* (1923), 82 Pa. Super. Ct. 369; *State* v. *Snow* (1854), 3 R. I. 64; *Zimmerman* v. *Town of Bedford* (1922), 134 Va.

Carolina, Tennessee, Texas, Vermont, Virginia, Washington and West Virginia. These decisions are based on the old and elementary rule of evidence that the admissibility of evidence is not affected by the illegality of the means by which it was obtained and which was never seriously doubted until the *obiter dictum* stated in the case of *Boyd* v. *United States* (1886), 116 U. S. 616, 29 L. Ed. 746. See exhaustive history of this matter in 4 Wigmore, Evidence (2d ed.) §2183, and in notes in 136 Am. St. Rep. at p. 153, and 3 A. L. R. 1514, 24 A. L. R. 1508. This was the old common-law rule in England (Bishop of Atterbury's Trial (1723) 16 Howell's State Trials 490-498) and still prevails there. Even the United States courts will admit evidence obtained under invalid search warrant, if the warrants were state warrants and not federal warrants.

787, 115 S. E. 362; *Marshall* v. *Commonwealth* (1924), 140 Va. 541, 125 S. E. 329; *Lincoln* v. *Smith* (1855), 27 Vt. 328; *State, ex rel.,* v. *Gordon* (1917), 95 Wash. 289, 163 Pac. 772; *State* v. *Brown* (1922), 91 W. Va. 709, 114 S. E. 372; *State* v. *Montgomery* (1923), 94 W. Va. 153, 117 S. E. 870; *State* v. *Kees* (1922), 92 W. Va. 227, 114 S. E. 617, 27 A. L. R. 681; *State* v. *Davie* (1885), 62 Wis. 305, 22 N. W. 411; *Frihart* v. *State* (1926), 189 Wis. 622, 208 N. W. 469; *Bookbinder* v. *United States* (1923), 287 Fed. 790; *Hawker* v. *Queck* (1924), 1 Fed. (2d) 77, 79, *certiorari* denied 266 U. S. 621, 45 Sup. Ct. 99. 69 L. Ed. 472.[2]

Practically all of the state constitutional provisions regarding searches and seizures are substantially the same as our own. See citations to earliest constitutions in article by Fraenkel, 34 Harvard Law Review 361 and to latest constitutions in Cornelius, Search and Seizure, 9-11. Eighteen states, recognizing that their constitutions do not require more than: (a) A statement on oath specifically describing; (b) the place; and (c) the property to be seized, and desiring, no doubt, to render more difficult the issuance of search warrants, have passed special statutes setting forth various procedures and requirements which must be met before search warrants can be issued. (Failure to comply with these statutes has given rise to a number of cases that may appear, to one who does not examine the statutes, to be in conflict with *Rose* v. *State, supra,* and the other cases referred to.)

Of these 18 state statutes, *Alabama,* §5474 Code 1923;

---

[2] The United States courts, although bound by the provisions of an express statute (hereinafter cited and quoted) requiring the commissioner to hear evidence before issuing a warrant, have held that it is not "imperative that the only evidence which will justify the issuance of a search warrant and the seizure of property thereunder be common-law evidence. If that were so, it would be very difficult to sustain the granting of search warrants or the seizure of property held for the purpose of violating the Volstead Act." In re No. 15 East Third St. (1922), 284 Fed. 914; that where smuggled liquors are involved, search warrants may issue upon the affidavit of one "who has

*California*, §§1526-7 Gen. Laws 1923; *Idaho*, §9322-3 Comp. Stat. 1919; *New Jersey*, §100-282 Comp. Stat. 1924; *New York*, §§794-5 Parker's Anno. Code 1910; *South Dakota*, §§4607-8 Rev. Code 1919; *Utah*, §§9371-2 Comp. Laws 1917, are general search warrant statutes requiring that "the magistrate before issuing the warrant, must examine on oath the complainant and any witnesses he may produce, and take their depositions in writing, and cause them to be subscribed by the persons making them; and the depositions must set forth facts tending to establish the grounds of the application or probable cause for believing that they exist." *Florida* Gen. Laws 1925, Vol. 1, p. 504, §19, provides that " . . . such affidavit shall set forth the facts on which such reason or belief is based . . ." and §6 provides that the magistrate may also "receive further testimony from witnesses or supporting affidavits or depositions in writing"; *Illinois*, §30, ch. 43, Ill. R. S. 1923 provides that the complaint in writing shall contain "the facts upon which said belief is based"; *Massachusetts*, §62 Gen. Laws 1921 provides that "such complainants shall state the facts and circumstances on which such belief is founded, and such allegations shall be recited in the complaint and warrant"; *Michigan*, §25 Public Acts 1925 p. 751 amended the 1919 act by eliminating the words "that he has reason to believe and does believe,"

---

no personal knowledge of the illegal transaction other than what has come to him upon information and belief," and that where smuggling is alleged, it is not necessary that facts must be averred . . . which would make out a *prima facie* case . . . nor that the affidavit to these facts must be made "by some ,one whose testimony would be evidentiary." *United States* v. *Bookbinder* (1922), 278 Fed. 216; In *United States* v. *Lepper* (1923), 288 Fed. 136, the court, in holding that probable cause was shown to justify the issuance of the warrant, said: "It is not required that the evidence should show that a crime was actually committed, or that the facts should be alleged strong enough to convict the defendant. It is enough if probable cause exists, or a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a discreet and prudent man in believing that a crime is being committed."

thus requiring a positive statement of fact in the sworn complaint; *Missouri,* §25 Laws 1923 p. 244 requires that probable cause shall appear to the satisfaction of the court "either from the facts set forth in said petition or from evidence heard thereon"; *Montana,* §11071 Rev. Code 1921 Vol. 4 as amended by ch. 116, laws 1923, requires in the complaint in writing verified by affidavit "the facts upon which such belief is based"; *Nevada* Acts 1923 ch. 31, p. 37, and ch. 37 p. 43, repealed its liquor law of 1918, including §9 relating to searches and seizures, and made "the provisions of the national prohibition (Volstead) act of the United States of America the law of the State of Nevada"; *North Dakota,* §10145 p. 18 Supp. 1925 provides that search warrants may issue "whenever any person shall appear before such court and make affidavit that he has discovered," etc.; *Rhode Island,* §1822, §9 Gen. Laws 1923, in case of the search of a dwelling house, requires the complainant on oath to "state the facts on which such belief is founded, which facts shall be recited in the complaint"; *South Carolina,* §46 Code 1912 requires statement supported by oath "which shall set forth fully and particularly all the facts upon which such application is based"; *Virginia,* §1, Acts 1920 p. 516 requires an affidavit "alleging briefly the material facts constituting the probable cause . . ." The search and seizure section of the *Utah* Intoxicating Liquor Law §3354 Comp. Laws 1917 provides that the written information under oath shall state "the facts within his knowledge and upon which he bases his belief." The *United States* statute on this subject, Act June 15, 1917, tit; 11, §3, §4 and §5, 40 Stat. at L. 228 *et seq.* [U. S. Comp. St. 1918, U. S. Comp. St. Ann Supp. 1919 §10496¼c] is as follows:

"SEC. 3. A search warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person and particularly describing the property and the place to be searched.

"SEC. 4. The judge or commissioner must, before issuing the warrant, examine on oath the complainant and any witness he may produce, and require their affidavits or take their depositions in writing and cause them to be subscribed by the parties making them.

"SEC. 5. The affidavits or depositions must set forth the facts tending to establish the grounds of the application or probable cause for believing that they exist."

It is claimed by those who demand that a showing of facts be made by definite and positive evidence submitted to the issuing magistrate, that the homes of innocent persons might sometimes be searched if all that is needed to set the law in motion is an affidavit made by an individual or by a member of the police department, prohibition force or other law enforcement agency, who may have received his information from some hearsay source. We are not advised as to the number, if any, of searches made which are not justified by an honest belief that the law is being violated. Fruitless searches must occasionally occur, but it may be that many of such cases are instances where the still or intoxicating liquor sought has been disposed of, rather than instances where there was no reasonable ground for the search.

If unjustifiable affidavits are being filed with issuing magistrates and unwarranted searches are being made in this state, a serious matter for legislative consideration is presented. Confronted by the same problem, a number of states have enacted statutes prohibiting the search of private residences under certain conditions, as for example: *Conn.* Acts 1921, §7, p. 3279; *Ill.* §30, ch. 43, R. S. 1923 p. 1442; *La.* Acts 1921, No. 39, p. 43; *Mass.* §62 Gen. Laws 1921, Vol. 2, p. 140; *Okla.* §7013 Com.

Stats. 1921; *Ore.* §3, ch. 180, Gen. Laws 1923 p. 256;
*Penn.* §8, p. 37-8, Laws 1923; *R. I.* §1882, §9 Gen. Laws
1923, p. 577; *S. C.* §830 Code 1912, Vol. 2, p. 436; *Tex.*
Crim. Stat. 1925, Art. 691, p. 186; *Wis.* §4840, (6) 11
Stats 1921, p. 2363. *Nevada,* Acts 1925, ch. 10, p. 16
has provided that the making of a false affidavit to se-
cure the issuance of a search warrant is an offense pun-
ishable by a prison term of one to fourteen years, and
eighteen states, as already pointed out, have enacted
statutes requiring a definite statement of facts to be
placed in the affidavit for the search warrant. But we
do not believe that this court should read into the law
that which is not there and which cannot rightfully be
put there except by legislative enactment. The court
judicially knows that a bill for an act which was defeated
by a large majority was introduced at the recent (1927)
session of the general assembly which sought to enact
into law exactly the same thing that the decision of the
instant case makes the law by a forced, and as we shall
presently show, an historically false construction. This
bill, popularly known as the "Scott amendment to the
Wright Bone Dry Law," was as follows, the italics repre-
senting the proposed new matter:

"If any person shall make an affidavit before any
mayor, justice of the peace or judge of any court
that such affiant has reason to believe and does
believe, *and setting forth in such affidavit the facts*
*tending to establish such belief,* that on any described
or designated premises or tract of land, there is .
intoxicating liquor or a still or distilling apparatus
which is being sold, bartered, used or given away,
or possessed, in violation of the laws of this state,
such justice of the peace, mayor or judge, *if satisfied*
*of the existence of such intoxicating liquor or still or*
*distilling apparatus on the premises or tract of land*
*so described or designated, or that there is probable*
*cause for believing that such intoxicating liquor or still*
*or distilling apparatus exists thereon,* shall issue his

warrant to any officer having power to serve criminal processes. . . ."

If the strict compliance with the requirements of our present statutes concerning search warrants which was had in the case at bar is not sufficient to meet the constitutional guaranty of "no search but upon probable cause supported by affidavit," then the court might rightfully declare our search warrant statute unconstitutional or define what steps in addition to our statutory requirements are necessary to comply with the Constitution. But we believe that the provisions of our statute *do* comply with the Constitution's requirement. Search warrant acts, in almost exactly the same language, have always existed in Indiana, but it is only since the flood of liquor cases have engulfed our courts and submerged our dockets, that there had been any objection made to their constitutionality. In *Rosanski* v. *State* (1922), 106 Ohio St. 442, 140 N. E. 370, the court said:

'There has been a great deal of misguided sentiment foisted upon a patient people during these latter days about the constitutional rights and privileges of the criminal classes. If all the doctrines which are being urged by attorneys representing liquor law violators should be adopted by the courts as the true interpretation of our sacred Bill of Rights, it would no longer be recognized as a charter of government and as a guaranty of protection of the weak against the aggressions of the strong, but rather as a charter of unbridled license and a certificate of character to the criminal classes."

In *State* v. *Shelton* (1926) 314 Mo. 333, 284 S. W. 433, the court said:

"The amazing temerity and boldness with which the prohibition laws of our state are now deliberately violated in almost every community presents a strong appeal to the courts for a practical and common sense construction of our laws, that will lead to the punishment of those who violate its provisions."

Chief Justice Taft of the United States Supreme Court, in an address before the American Law Institute in Washington on May 12, 1927, said: "No lover of his country can have gone through the last three or four years without having been stirred deep in his heart over the failure of the administration of our criminal law."

Examining the question of the sufficiency of our search warrant statute and procedure in the light of both constitutional history and law, we do not find anything that requires more than the procedure set out in our statute. The unreasonable searches and seizures objected to by the American colonists before the war of the Revolution were those provided for in the "writs of assistance" or "general warrants" issued, without any complaint under oath, to officers of the crown, permitting them to search generally anywhere and any time the houses of any persons for any smuggled goods.

In his famous argument against writs of assistance[3] in 1761, James Otis said:

> "Your Honors will find in the old books concerning the office of justice of the peace, precedents of *general warrants* to search suspected houses. But in more modern books, you will find only *special warrants to search such* and such houses, specially named, in which the complainant has before *sworn that he suspects his goods are concealed;* the same manner I rely on it that the writ prayed for in this petition, being *general*, is illegal." Life of James Otis (Adams) 55.

The established rule at common law was that "in case of a complaint and oath of goods stolen, and that (affiant) suspects the goods are in such a house, and shows the cause of his suspicion, the justice of the peace may grant a warrant to search in those suspected places

[3] See colorful description in Van Tyne's Causes of the War of Independence, Chap. VII, of the court scene of Paxton's case (Quincy's Mass. Report.)

mentioned in his warrant, and to attach the goods and the party in whose custody they are found." Hale, Pleas of Crown (1680), pp. 113, 150. Otis, Adams and the others, engaged in the contest with the British Government over the right of search and seizure, claimed nothing more than the rights of Englishmen at common law. And, at common law, the recognized form of affidavit by which to institute any proceeding in court, whether of arrest, or search, or otherwise, always was, and still is, to aver that the affiant believes and has probable cause to believe the facts therein stated. The evil against which Otis declaimed was the issuance of warrants or writs of assistance which gave general authority to any officer of the King, of whatever degree, to search any place in the province of Massachusetts that he might choose, on mere suspicion, and to seize anything found there which he might deem proper to seize, as smuggled goods. These warrants were issued as continuing authority during the life of the King and continuance in office of those who held them. The form of writs that had been issued in Boston during the reign of George II had commanded the surveyor of customs "and his deputies and servants from time to time at his or their will, as well in the day as in the night, to enter and go on board any ship, boat or any other vessell . . . and to view and search and strictly to examine the same . . . and also . . . to enter and go into any vaults, cellars, warehouses, shops or other places . . . and to open any trunks, chests, boxes, fardells or packs made up or in bulk, whatever," for the purpose of finding smuggled goods. And these writs had been issued in answer merely to a letter of request, without any affidavit whatever. Upon the death of the King and the accession of his grandson as George III, citizens of Boston, led by James Otis, opposed renewing these general writs. But, so far were James Otis and

John Adams and their party from opposing the issue of a search warrant upon an affidavit that the affiant "believes" the facts authorizing it to be issued, that, at the next session of the Colonial Legislature (the General Court), only three months after Otis made his second celebrated argument, they procured an act to be passed (which the Governor of the colony refused to approve) to the following effect: That upon application of any officer of the customs to any court or justice stating, on oath, "that he has had information of the breach of the acts of trade, and that he verily believes or knows such information to be true" and giving "the name of the person informing and the place informed against," a warrant should issue to aid the custom officer "in the due execution of his office relating to the information aforesaid." Quincy's Mass. Report (1762) 495.

While the general writ was issued, notwithstanding the able argument of Otis in Paxton's cases (1762), 1 Quincy 51 and 541; (see review of the law on Writs of Assistance, 1 Quincy Appendix I and II, p. 395-572), the courts in the colonies of Pennsylvania, Connecticut and Virginia refused to grant them, 1 Quincy (Mass.) 509, 510 [4] and the subsequent cases of *Entick* v. *Carrington* (1765), 2 Wils. 275, 19 Howell's State Trials, 1030; *Money* v. *Leach* (1765), 3 Burrow 1692 and 1742, 1 Wm. Blackstone 555, 19 Howell's State Trials 1002; *Case of John Wilkes*, (1770), 2 Wils. 151, 4 Burr 2527, 19 Howell's State Trials 1075 and 1382, and *Wilkes* v. *Wood* (1763),

---

[4] Writs of assistance were issued by Lord Baltimore's government under the Act of 1673, Osgood, American Colonies 17th Century, Vol. 3, p. 236, but the convention of the province of Maryland in 1776, declared that "all warrants without oath or affirmation to search suspected places or to seize any person or property are grievous and oppressive and all general warrants to search suspected persons, without naming or describing the place or the person in special, are illegal, and ought not to be granted." American Archives, 5th Series, Vol. 3, p. 145. A like provision is found in the Vermont Constitution of 1777. In 1769 Lord Botetourt, royal governor of Virginia, granted a petition of the people against the use of writs of assistance.

19 Howell's State Trials 1154, and an act of parliament in 1766, (following resolutions by the House of Commons condemning general warrants for the seizure of persons or their books or papers), established forever in the law of England (and her colonies) the invalidity of general warrants and writs of assistance [5] authority for which had never really existed. See the Law of Arrests (London 1742) Brit and Sandby, Ch. 5, p. 173, 174, ch. 8 p. 186.

While the improper exercise of the royal prerogative of the British crown by writs of assistance through the Admiralty drew spirited opposition and resistance from the colonies, it was not one of the direct causes of the American Revolution, since the invalidity of the writs was acknowledged before the war, and no mention of them was made in the Declaration of Independence. However, the experience with the illegal writs was no doubt a factor of considerable influence in the writing

[5] The decisions of Chief Justice Pratt (afterward Lord Camden) in *Entick* v. *Carrington, supra,* and of Lord Mansfield in *Money* v. *Leach, supra,* merely held that "general warrants" which did not describe any particular place to be searched nor any specific thing to be seized, and did not fix any time for making the search commanded, and which were not based on any affidavits whatever, whether of facts or belief, were illegal. The case of *Entick* v. *Carrington* grew out of the following facts: The Earl of Halifax, as a Lord of the King's Privy council and one of the principal secretaries of state, without the filing of any affidavit, issued a warrant directing that certain "Messengers in ordinary," taking a constable to assist them, should search for and arrest plaintiff, as being the author of an alleged libel, and seize his books and papers and bring them before the Earl. The messenger went to plaintiff's dwelling, which was not named or described in the warrant, searched it, and arrested him and seized many books and papers found there, none of which were particularly described in the warrant. And the case of *Money* v. *Leach,* grew out of the fact that the Earl of Halifax, six months later, without an affidavit being filed, issued a like warrant to search for "the authors, printers and publishers of the seditious libel entitled 'The North Briton No. 45,' " and to seize them "together with their papers," nobody being named and no place to be searched or papers to be seized being specified, under authority of which, the dwelling house of Leach, in which he did business as a printer, was entered and searched, and he was arrested and certain papers were seized. As was stated above, neither of these warrants was based upon any affidavit whatever. No question as to an affidavit stating what affiant "believed" being a sufficient basis for issuing a search warrant was involved, or was even suggested by the court or by counsel.

into the Constitution of the United States (Amendment IV) of the provision against unreasonable searches and seizures. When the original draft of the Constitution was submitted to the states for ratification, a number of the states recommended that such a provision be placed in a Bill of Rights. 1 Elliot, Debates on the Constitution (New York) p. 328, (Rhode Island), Vol. 1, p. 335, (Maryland) Vol. 2, p. 551, (Virginia) Vol. 3, p. 658, (North Carolina) Vol. 4, p. 244.[6]   None of these recommendations asked more than (1) an affidavit or information on oath (2) naming the person and (3) describing the place and that (4) general warrants should

---

[6] The text of these recommendations was as follows:

*New York.*  "That every freeman has a right to be secure from all unreasonable searches and seizures of his person, his papers, or his property; and therefore, that all warrants to search suspected places, or seize any freeman, his papers, or property, without information, upon oath or affirmation, of sufficient cause, are grievous and oppressive; and that all general warrants (or such in which the place or person suspected are not particularly designated) are dangerous, and ought not to be granted."

*Rhode Island.*  "XIV.  That every person has a right to be secure from all unreasonable searches and seizures of his person, his papers, or his property; and therefore, that all warrants to search suspected places, to seize any person, his papers, or his property, without information upon oath or affirmation of sufficient cause, are grievous and oppressive; and that all general warrants (or such in which the place or persons suspected are not particularly designated) are dangerous, and ought not to be granted."

*Maryland.*  "That all warrants without oath, or affirmation of a person conscientiously scrupulous of taking an oath, to search suspected places, or seize any person or his property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend any person suspected, without naming or describing the place or person in special, are dangerous and ought not to be granted."

*Virginia.*  "14th.  That every freeman has a right to be secure from all unreasonable searches and seizures of his person, his papers, and property; all warrants, therefore, to search suspected places, or seizure of any freeman, his papers, or property, without information on oath (or affirmation of a person religiously scrupulous of taking an oath) of legal and sufficient cause, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend any suspected person, without specially naming or describing the place or person, are dangerous, and ought not to be granted."

*North Carolina:*  "14.  That every freeman has a right to be secure from all unreasonable searches and seizures of his person, his papers and property; all warrants, therefore, to search suspected places, or to apprehend any suspected person, without specially naming or describing the place or person, are dangerous, and ought not to be granted.

not be issued.   The amendment as originally adopted was as follows:

"Art. VI.   The right of the people to be secure in their persons, houses, papers, effects, against unreasonable searches and seizures, shall not be violated; and no warrants shall issue, but upon principal cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."    (1 Elliott's Debates 339.)

The provision of the Constitution of Indiana referred which was copied from Art. 4 of the Amendments to the Constitution of the United States, only guarantees to persons the rights which freemen had always possessed under the common law wherever it was in force, and does not confer any new rights.   *Carey* v. *Sheets* (1879), 67 Ind. 375, 377.

The common law of England, as it existed when the Colony of Virginia was settled in 1607, modified by general statutes previously enacted, is and always has been the law of Indiana, except as changed or modified by Constitutions and statutes adopted or enacted since that date.   §244 Burns 1926, 2 R. S. 1824 p. 256, §1.

Following the common-law rule, before there was any statute on the subject, special warrants were issued in Indiana to search for stolen property and for other purposes covered by the common law, upon affidavits of belief, the common law precedents being recognized as controlling.   But in 1843, certain parts of the law of procedure were reduced to a code, and it was then provided by statute that:

"It shall be lawful for a justice of the peace, upon complaint made before him on oath or affirmation, that a larceny, burglary, or robbery has been committed, and that the person swearing or affirming does verily believe that the stolen property (goods or other property) is concealed in any dwelling house,

out-house, garden, yard, or other place or places, to issue a warrant under his hand and seal, commanding every such dwelling house or place to be searched in the day time . . . or such warrant may issue to search any house or place in the night time, if the affidavit be positive that the stolen goods or property are concealed therein." R. S. 1843 p. 1006, §24.

Thus the law stood when the present Constitution of Indiana was adopted in 1851, the provision as to unreasonable searches and seizures, and forbidding warrants to issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized, being an exact copy of similar provisions in the Constitution of 1816. R. S. 1843, p. 42, §8, 1 R. S. 1852 p. 43, §11.

And the legislature, at its first session under the new Constitution, passed an act which provided as follows:

"Search warrants may be issued, by justices, on complaint on oath, charging stolen goods to be, as the affiant believes, concealed in any place, and particularly describing such place and the goods alleged to be stolen . . ." 2 R. S. 1852 p. 500, §20. "Justices shall use substantially the following forms, with such variations as the circumstances of each case may require; . . . affidavit for search warrant, 'The State of Indiana, County of . . . . . . . . . . SS: A. B. swears (or affirms, as the case may be) that he verily believes that (here describe the property) of the value of . . . . . . . . . . . dollars, the property of said affiant, and heretofore feloniously stolen from him, is concealed in or about the dwelling house of C. D. situated in the township of Charlestown in said county' (signed and sworn to)." 2 R. S. 1852 p. 502, §31.

The general search warrant statute now in effect, §56 *et seq.*, ch. 169, Acts 1905 p. 596, §2085 *et seq.* Burns 1926, requires an affidavit "that affiant has reason to believe and does believe," etc., and applies in cases:

(1)   Of stolen or embezzled goods; (2) of devices used for taking fish unlawfully; (3) of forged or counterfeit money; (4) of gambling apparatus; (5) of obscene printed matter, and §57, same act (§2086 Burns 1926), sets out a form for the affidavit which "shall be deemed sufficient," wherein the affiant "swears (or affirms, as the case may be) that he believes and has good cause to believe," etc.

In the statute regarding searches for dead human bodies, it is provided that the justice or judge and accompanying peace officer shall enter, inspect and search when an affidavit is filed "alleging that affiant has good reasons to believe and does believe" that such body, etc. is secreted in a building or place therein particularly described. §61, ch. 169, Acts 1902 p. 598, §2091 Burns 1926.

In the statute regarding the issuance of search warrants in cases of cruelty to animals, the complaint must be made on oath or affirmation "that the complainant believes," and the magistrate "shall issue and deliver a search warrant," "if satisfied that there is reasonable cause for such belief."   §588, ch. 169, Acts 1905 p. 725, §2770 Burns 1926.

In the statute regarding searches for trade-marked containers, the complainant must make oath "that he has reason to believe" and "said court must thereupon issue a search warrant."  §4, ch. 178, Acts 1917 p. 689, §14420 Burns 1926.

In the new statute regarding the issuance of warrants authorizing searches for fish or wild birds or animals possessed unlawfully or for devices used in taking the same unlawfully, it is provided that the affidavit must describe the place to be searched, the things to be searched for and alleging substantially the offense in relation thereto, and "that the affiant believes and has good cause to believe, that such things as are to be searched for are there concealed."   §35, ch. 35, Acts 1927 p. 107.

The act providing for the issuance of search warrants

for intoxicating liquor, stills, etc., ch. 48, §31, Acts 1925 p. 157, §2746 Burns 1926, has already been set out, in part. It is substantially the same in form as the general search warrant statute above referred to, changed only so as to be more inclusive since the advent of state and national prohibition, and provides that the affidavit shall set out, "That such affiant has reason to believe and does believe that on any described or designated premises or tract of land, there is intoxicating liquor or a still," etc.

No case has ever held that anything more is necessary than a compliance with the plain wording with these several statutes.

An affidavit that affiant believes a certain fact to be true has always been held by the courts of Indiana and of many other states, to have the same effect, for the purpose of instituting a proceeding and conferring jurisdiction on the court, as a positive assertion on oath that such fact is true. *Simpkins* v. *Malatt* (1857), 9 Ind. 543; *State* v. *Ellison* (1860), 14 Ind. 380; *Curry* v. *Baker, Governor* (1869), 31 Ind. 151; *Franklin* v. *State* (1882), 85 Ind. 99; *Toops* v. *State, supra; Thayer* v. *Burger* (1885), 100 Ind. 262, 264; *Rose* v. *State* (1909), 171 Ind. 662, 667, 87 N. E. 103; *Champ* v. *Kendrick, Trustee* (1892), 130 Ind. 549, 552, 30 N. E. 787; *Harris* v. *Heberton* (1841), 6 Miss. 575; *Steamboat Osprey* v. *Jenkins* (1845), 9 Mo. 643; *Pratt* v. *Stevens* (1884), 94 N. Y. 387; *Election Cases* (1870), 65 Pa. 20; *Gibbons* v. *Sheppard* (1868), 2 Brewst. (Pa.) 1; *Koch* v. *District Court* (1911), 150 Iowa 151, 155; *Shaw* v. *State* (1925), 196 Ind. 39, 146 N. E. 855; *Chas. Hegewald Co.* v. *State, ex rel.* (1925), 196 Ind. 600, 149 N. E. 170.

And making a false affidavit to institute such a proceeding has been held to constitute perjury. *Commonwealth* v. *Cornish* (1814), 6 Binney (Pa.) 249; *Simpkins* v. *Malatt, supra, Taylor* v. *Robinson* (1870), 26 Wis. 545;

*State* v. *Davie* (1885), 62 Wis. 305, 311, 22 N. W. 411.

> "It was formerly thought that an oath did not amount to perjury unless sworn in absolute and direct terms, and that if a man swore according as he *thought, remembered, or believed* only, he could not be convicted of perjury. 3 Inst. 166. But the modern doctrine is otherwise. It is said by Lord Mansfield to be certainly true, that a man may be indicted for perjury in swearing that he *believes* a fact to be true which he knows to be false. *R.* v. *Pedley* (1784), 1 Leach 327." Roscoe, Crim. Evid. (7th ed.) 822.

The conscience of the person making the affidavit may be as firmly bound, and perjury as well assigned, when the averments are made upon information and belief as when they are direct and positive. If he makes the affidavit without having reasonable grounds for believing, and without believing, that all the material facts and allegations are true, in whichever form they may be stated, he is foresworn, and, upon proper proof, may be convicted of perjury. *Morley* v. *Guild* (1861), 13 Wis. 644; *Taylor* v. *Robinson, supra; State* v. *Davie, supra.*

A person wrongfully instituting a proceeding by making such an affidavit is liable for damages in a civil action in the same manner and to the same extent, whether he swore in positive terms or only upon belief, the gravamen of the action against him being that he caused the search warrant to issue, maliciously and without probable cause. *Harlan* v. *Jones* (1896), 16 Ind. App. 398, 400, 45 N. E. 481; *Carey* v. *Sheets* (1879), 67 Ind. 375; *Whitson* v. *May* (1880), 71 Ind. 269.

In the case of *Watson* v. *State* (1922), 109 Nebr. 43, 189 N. W. 620, it was said:

> "The defendant says that the provision, 'No search warrants shall issue but upon probable cause, supported by oath or affirmation,' is an express and positive prohibition against search warrants issued

upon complaints verified by information and belief. The argument is, an oath upon information and belief is not an oath at all, and therefore does not meet the constitutional requirement. It will be noticed, however, that the Constitution does not define an oath, and when the defendant says an oath upon information and belief is not an oath he is resorting to construction which is not necessary where provisions are express and positive. *The sufficiency of an oath to complaints and information is not fixed by the Constitution, but is a matter of legislative and judicial determination.* In some jurisdictions, notably the Federal districts represented by the courts cited *supra*, it has been held that an oath upon information and belief is not an oath, and that a complaint or information verified upon information and belief is void. This court is committed to a different rule." (Citing statutes and cases. Our italics.)

In this state, prosecutions of all criminal offenses except treason and murder may be by affidavit as well as by indictment, §2150 Burns 1926, §118, ch. 169, Acts 1905 p. 611, and it has frequently been held by this court that such affidavits may be made *on information and belief*. *Simpkins* v. *Malatt, supra; State* v. *Ellison, supra; State* v. *Buxton* (1869), 31 Ind. 67; *Franklin* v. *State* (1882), 85 Ind. 99; *Toops* v. *State* (1883), 92 Ind. 13.

The statute providing for trials before justices §2093 Burns 1926, §63, ch. 169, Acts 1905 p. 599, prescribes the form of the affidavit which is "A. B. swears, (or affirms, as the case may be), that on or about the.... day of...... 19...., at said county, C. D. *as affiant verily believes* (here state the offense)." Upon such complaint, charging any person with the commission of any felony or misdemeanor, made on oath before him, the justice of the peace or city judge *"shall issue his warrant for the arrest of such person and cause him to be brought forthwith* before him for examination or trial."

Surely it cannot be claimed that a person's house or his property is more sacred in the eye of the law than that person's liberty. The Constitution applies alike to warrants for arrest and warrants for search, yet for many years nothing more than the filing of an affidavit has been required as the basis for the issuance of a warrant for *arrest of a person.* In the face of the language of both the Constitution and the statutes, who can say that more is required to *search the person's property* than to *arrest and incarcerate the person himself.* See *Rosanski* v. *State, supra.*

In the case of *Lowery* v. *Gridley* (1862), 30 Conn. 450, a leading case on this subject, the Supreme Court of Connecticut, sixty-five years ago, decided that an oath that affiants "have reason to believe and do believe to be substantially true the allegations of" a complaint charging that intoxicating liquors were kept in a certain brick store intended to be sold in violation of law, was a sufficient affidavit for a search warrant, and the court said:

> "But further, the constitution does not in terms provide that the particular facts from which probable cause is to be inferred shall be sworn to, or that the magistrate who issues the warrant shall find probable cause. The constitution merely provides that the warrant shall not issue 'without probable cause, supported by oath or affirmation.' If anything more is required than an oath or affirmation that there is probable cause or what is equivalent, as an oath that the complainant believes and has reason to believe that an offense has been committed would be, it must be made out by construction. . . . An examination of the clause in question will show that *there is the same necessity for an oath of probable cause in the case of an ordinary arrest for a crime, as in the case of a search warrant. Indeed it would be strange if a cask of liquor was more sacred in the eye of the law than a man's person.* But it has never been thought necessary that in the case of a

common warrant it should be preceded by any-
thing but the complaint or information of a prose-
cuting officer. He is never understood as making
oath that the facts alleged are within his personal
knowledge. He could in scarcely an instance
honestly take such an oath. The meaning of such
a complaint or information is, that he has officially
made an investigation, and has reason to believe
and does believe, that the allegations are true.
. . . We are therefore clearly of the opinion
that the warrant was legal." (Our italics.)

Until today, Indiana has been committed to the doc-
trine of *Lowery* v. *Gridley, supra,* which was the prin-
cipal authority followed in *Rose* v. *State, supra.* In
arriving at the present decision of the court, *Rose* v.
*State* is overruled and *Lowery* v. *Gridley* is not followed,
just as Cornelius in his text on Search and Seizure, page
29, predicted more than a year ago:

"So far as the validity of the Indiana statute is
concerned the question seems to have been decided
by the decision of *Rose* v. *State* . . . in favor
of upholding such a statute. Recent develop-
ments have made it doubtful whether or not *Rose*
v. *State* will be adhered to when the question of this
later act comes before the Indiana Supreme Court."

The case of *Rose* v. *State, supra,* held that Acts 1907
p. 27, §2, providing that "if any person shall make an
affidavit . . . that such affiant has reason to be-
lieve and does believe" that liquors are unlawfully kept
at a certain place, a search warrant shall issue, did not
violate the Constitution (Art. 1, §11), providing that no
search warrant shall issue "but upon probable cause,
supported by oath or affirmation"; and it is not neces-
sary that the facts inducing such belief be set out. The
court in its opinion said:

"It is next insisted by appellants that 'Article 1,
§11, of the Constitution of the State requires that
VOL. 199—24

the facts upon which the belief of the affiant is based must be set out in the affidavit, and that an affidavit on information and belief is not sufficient, and, as the act of 1907, *supra*, authorizes the issuance of such a warrant on such an affidavit, it is in violation of said section of our Constitution.' Said section of the Constitution only requires that 'no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized.' In *Lowery* v. *Gridley* (1862), 30 Conn. 450, under a constitutional provision substantially the same as ours, it was held that an act which authorized the issuance of a warrant to search and seize property upon the oath of the affiant that he 'had reason to believe and did believe' the facts alleged in the affidavit to be true, was valid and not in violation of said provision of the constitution; that such oath was sufficient and that it was not necessary that the facts upon which the belief was founded should be set out in the affidavit."

The prevailing opinion in the case at bar, which in effect overrules *Rose* v. *State, supra,* holds that although the Rose case decided that an affidavit for a search warrant made on information and belief in the language of the statute is sufficient and that it was not necessary to set out in the affidavit the facts upon which the belief is founded, that the court did not there decide that a further and additional showing of facts by oral testimony, deposition or otherwise was not necessary; in other words that, in the Rose case, only the technical sufficiency of the affidavit was discussed, that some other showing of facts might have been made and that the court did not hold that an affidavit tracking the statute constituted probable cause. A better plan than to speculate on what was before the court and what the court actually decided in the Rose case is to examine the record of that case. This we have done. The record shows an entry as follows:

"Comes William O. Thomas, Prosecuting Attorney who prosecutes the pleas of the State in this behalf and files the affidavit of John W. Brannan asking that search warrant issue and that a room in a frame brick veneered building on lot thirty Market street in the original plat of the town of Monon, White County, Indiana, be searched for liquors therein kept, sold, bartered and given away, and the court now orders that such search warrant issue which is now issued and delivered to Ham E. McCully Sheriff of White County, Indiana, and comes now said sheriff and makes return upon the warrant thus issued to him, which affidavit, warrant and the return of the sheriff thereon endorsed, all read as follows, to wit:"

It also shows that the judge indorsed on the back of the warrant the following: "Clerk will issue search warrant for the within described premises in conformity with the within affidavit." It is thus seen that this court in the Rose case had exactly the same question before it that is presented by the case at bar. There does not seem to us to be any reason now to overrule that decision, made almost twenty years ago, which upheld the validity of our search warrant procedure which has been in effect for almost a century. (§24, ch. 55, R. S. 1843, p. 1006.

Language used in many other recent Indiana cases shows that this court has recognized that an affidavit following the provisions of our search warrant statute is all that is required to be presented to the issuing magistrate for the issuance of the warrant.

"It is . . . objected that the search warrant was invalid because, it is asserted, the affidavit . . . on which the search warrant issued was insufficient, as a matter of pleading, to authorize its issuance by reason of *being drawn in the form prescribed by statute.* The objection is not well taken." (Our italics.) *Tongut* v. *State* (1926), 197 Ind. 539, 151 N. E. 427.

"*All that the statute or the constitution requires is that an affidavit particularly describing the place to be searched and the person or things to be searched for shall first be filed.*" (Our italics). *Morgan* v. *State* (1923), 194 Ind. 39, 141 N. E. 790.

"The affidavit," said the court in *Meno* v. *State* (1925), 197 Ind. 16, 148 N. E. 420, " . . . is nothing more than a transcript of the proper showing upon which the warrant is based, which is some information to the person against whose property the warrant is directed as to its legality."

The affidavit is referred to in the case of *Callender* v. *State* (1922), 193 Ind. 91, 138 N. E. 817 as follows: "The law requires the affidavit, *upon which a search warrant is issued* to be filed and to remain on file, in the office." (Our italics.)

In affirming a judgment of conviction in *Snedegar* v. *State* (1926), 198 Ind. 182, 150 N. E. 367, the court said: " . . . an affidavit for a search warrant *in the form prescribed* by statute was filed with the mayor . . ., who thereupon issued a search warrant to Julius Bryan commanding him to search. . . . Prior to the filing of the affidavit . . . the circumstances and activities of appellant in, around and about the premises . . . were brought to the attention of Bryan, a prohibition enforcement officer . . . by residents of the vicinity. . . . The evidence," said the court, referring to the evidence adduced at the trial of the cause, "well supports the inference that . . . the officer . . . was advised of appellant's activities . . . by reliable persons residing in the neighborhood. . . . For aught appearing these circumstances were before the mayor. . . . There was no error in admitting the questioned evidence." (Our italics.)

In *Thompson* v. *State* (1921), 190 Ind. 363, 130 N. E. 412, where an affidavit for a search warrant was sworn-to before a superior court judge, and the warrant was issued and served the same day but the affidavit was not filed until a later date, the court said: "under these facts we hold that the

warrant was not supported by 'oath and affirmation' as required by the constitutional provision against unreasonable search and seizure, and was illegal." The court quoted Art. 1, §11, Indiana Constitution, and §4, Acts 1907 p. 27, §8340 Burns 1914, and said: "This latter section is not in conflict with §25 *supra* (§25 Prohibition Law 1917) and is not repealed by it. These statutes when construed together, are not in conflict with Art. 1, §11, *supra.* When construed together they forbid issuing a search warrant without an affidavit being filed as provided by §8340 Burns 1914, *supra.*"

In *Mowlan* v. *State* (1926), 197 Ind. 517, 151 N. E. 416, the court said: "The search warrant in this proceeding was issued by a justice of the peace, after an affidavit for a search warrant had been filed with him. . . . In §2 of said ch. 33 of the acts of 1923, the law in regard to search warrants is stated as follows: 'Search warrants to search any place for still or distilling apparatus may be issued as now provided by law for searching for intoxicating liquor.' And at the time said act became effective and when the alleged offense was committed by appellant, §25 of the prohibition law of 1917 provided: 'If any person shall make an affidavit before any mayor, justice of the peace, or judge or any court that such affiant has reason to believe and does believe that any person, firm or corporation has in his, its or their possession any intoxicating liquor which is being sold, bartered or given away as a beverage or kept for the purpose of being sold, bartered, used or given away in violation of the laws of this state, such justice of the peace, mayor or judge shall issue his warrant to any officer having power to serve criminal processes'" etc.

In the brief of the attorney for appellee, it is said:

"But for the agitation which the present prohibition act causes, we are convinced that this question would never have been seriously urged upon this court again in view of the decision in *Rose* v. *State* and in view of the accepted practice antedat-

ing that case as far back as the very beginning of our state government. We submit, that no exigencies can change the meaning of §11 of Art. 1 of the Constitution. It means now what it did under *Rose* v. *State,* what it did since 1851, indeed, what it meant when it was §8 of Art. 1 of the prior Constitution. The state has many occasions to exercise the power to search in respect of crimes far more serious than those committed under the prohibition statute. We make no contention against a full and complete extension of §11 of Art. 1 for the security of the citizens of the state, but to hold with appellant's views would require an extension not contemplated by §11 itself and never heretofore so deemed necessary by either the people, the bar or the bench of this state.

"It is earnestly urged that no exigencies be permitted to induce a construction of §11 of Art. 1 which has never heretofore been deemed a proper construction, and that the proper construction placed thereon in *Rose* v. *State,* so long acquiesced in before and since that decision was rendered, be adhered to."

The proper limits of this opinion will not permit a review of the many cases in other states which support the rule laid down in *Rose* v. *State, supra,* but brief quotations will be made from a few of them, all of which were apparently overlooked in the prevailing opinion, which, without citing any cases (other than those which we hereinafter distinguish), says "further discussion . . . is unnecessary, in order to add to or supplement the composite, which results from so great a number of judicial opinions of these courts, nearly all of which are of one mind."

The case of *Lowery* v. *Gridley, supra,* has already been quoted from (p. 368). Even earlier than the decision of that case, the Supreme Court of Vermont held that a certified complaint stating that affiants "have reason to believe and do believe that intoxicating liquors are kept

or deposited" in a certain dwelling house and intended for unlawful sale, was sufficient to justify issuing a warrant for the search of the house thus decribed. The court said of the section of the Bill of Rights now under consideration:

"This article of the constitution is directed against the use of general warrants; and it is the searches and seizures under such warrants, which are pronounced unreasonable. It was claimed in England up to the sixth year of the reign of George III, that at the common law, general warrants were valid, and such was the resolution of the twelve judges of the time of Charles II and James II. See vol. 3 State Trials, 53; the trial of Carr for a libel. And certain it is that it had been the practice to issue general warrants up to the year of the reign of George III (1765), when they were adjudged to be illegal, both in the court of common pleas and the King's bench. See *Entick* v. *Carrington* (1765), 2 Wilson (Eng.) 275, and *Money* v. *Leach* (1765), 3 Burrow (Eng.) 1766." *Lincoln* v. *Smith* (1855), 27 Vt. 328, 346.

In *Loeb* v. *State* (1923), 133 Miss. 883, 98 So. 449, a policeman in the city of Meridian made affidavit before a justice of the peace that:

"He believes and has good reason to believe that vinous, spiritous, malt, alcoholic, and intoxicating liquors are being kept and offered for sale and barter are sold and bartered in a building occupied by Susie Lowe or Loeb at a residence on Thirty-Third avenue, house No. 1009, in the city of Meridian, Mississippi. . . . Thereupon, the justice of the peace issued a search warrant, commanding the search of the buildings," etc.

The Mississippi statute, §2088 Hemingway's Code, Laws 1908, ch. 115, provides that:

"Upon the affidavit of any credible person that he has reason to believe and does believe that any

intoxicating liquors, . . . . etc., . . . it
shall be the duty of any justice of the peace . . .
to issue a search warrant."

The appellant, in objecting to the overruling of her
motion to suppress the affidavit, contended:

"That this statute is unconstitutional because
it authorizes and directs the justice of the peace to
issue the warrant 'upon the affidavit of any credible
person that he has reason to believe and does be-
lieve that any intoxicating liquors . . . are
. . . . kept or offered for sale,' etc.; that the
language of the statute takes away all discretion of
the justice of the peace as to whether there is prob-
able cause and that, under section 23 of the Con-
stitution, that the existence of probable cause is a
judicial question for the determination of the ju-
dicial officer, and not for the determination of the
affiant. It is contended that the Constitution re-
quires positive, direct evidence of the facts alleged
to be produced before the justice of the peace, and
for the justice of the peace to determine judicially
the truth of the facts set forth, before the warrant
can issue."

Continuing, the court said:

"It is true that the question of probable cause is a
judicial question, but in many cases judicial action
may be reasonably controlled by statute, and it is not
essential to probable cause that the alleged facts shall
be absolutely true." (Our italics.)

Further, the court said:

"We think the statute should be given a construction
that would enable the justice of the peace to pass ju-
dicially upon the credibility of the person making the
affidavit. This view will harmonize with the con-
stitutional purpose of securing the peace and enjoy-
ment of persons, homes and property from un-
reasonable seizure or search, and to so construe the
statute it will be clearly constitutional." (Our
italics.)

Wallace *v.* State—199 Ind. 317.

The court, quoting from the. case of *State* v. *Quintini* (1898), 76 Miss. 488, 25 So. 365, said:

"A person may. be arrested only on probable cause, but probable cause in law is a charge of crime made on oath, without regard to the fact whether the oath is made on personal knowledge or upon information and belief merely. By common law certain officers made information without oath, and such unsworn information was probable cause by the law. Here Carver was a constable, a sworn officer of the law, and his affidavit, made upon information and belief, charging Quintini with a crime, was probable cause, and constituted a valid charge against Quintini for his arrest and trial."

In *State* v. *Hall* (1926), 312 Mo. 425, 279 S. W. 102, the court, in considering the question of probable cause, recognizes the correctness of the law as it existed until today in Indiana. The court said:

"The existence of probable cause for the issuance of the warrant was under the statute (Sec. 25, p. 244, Laws 1923), to be determined by the justice of the peace from the facts set forth in the petition or from evidence heard thereon; the petition being ample in its averments in this respect, a resort to a hearing was not required to sustain the legality of the justice's action. Under the constitutional provision against unreasonable searches and seizures forbidding the issuing of a search warrant except upon probable cause the Legislature may declare what showing shall constitute probable cause for the issuance of the warrant, provided the petition therefor does not require less to be shown than was required for the issuance of such a warrant at common law. [*State* v. *Kees*, 92 W. Va. 277, 114 S. E. 617, 27 A. L. R. 681.] The Kees case, declaratory of the foregoing rule, is in line with numerous other authorities on this subject. [*Comm.* v. *Certain Lottery Tickets*, 5 Cush.. 369; *Dupree* v. *State*, 102 Tex. 455, 119 S. W. 301; *Rose* v. *State*, 171 Ind.

662, 17 Ann. Cas. 228; *Lowery* v. *Gridley*, 30 Conn. 450; *State* v. *Nowlan*, 64 Me. 531; *Lincoln* v. *Smith*, 27 Vt. 328; *State* v. *Davie*, 62 Wis. 305, 22 N. W. 411.] The requirements of an application for a search warrant, at common law, were that the affiant had probable cause to suspect and did suspect that an offense was being committed at a particular place or on designated premises under the control of the party or ·parties named and show his reasons for the suspicion. [2 Hale's P. C. (Am. ed.) p. 149r et seq.; Davis Cr. Justice, 60.] Our statute conforming to the requirements of the State Constitution requires a more specific and definite application for the warrant than was held to be sufficient at the common law. These requirements which have been stated, were fully complied with in the application for the warrant and the latter embodied the affirmative averments contained in the former. The matters of fact constituting the reasons for the issuance of the writ appearing on the face of the application it was only necessary for the justice to determine, as a matter of law, whether these facts as stated constituted such probable cause as to authorize the issuance of the warrant. Acting judicially, as the justice was authorized to do, he determined from the statement of the facts that such probable cause existed and issued the warrant. In thus acting he was within the purview. of the statute. (Sec. 25) which confers this power upon him when satisfied as to the facts set forth in the application and in conformity ·with the rule, generally recognized, that the question of probable cause is always to be determined by the court from the facts in each particular case. [*Miller* v. *Brown*, 3 Mo. 127; 24 R. C. L. sec. 9, p. 707 and notes, *Matson* v. *Michael*, 81 Kan. 360, 105 P. 537, as annotated L. R. A. 1915D p. 5, note III, general rule; *Simmons* v. *Gardner*, 46 Wash. 282, 89 P. 887, as annotated, L. R. A. 1915D p. 16, note 2 p. 43, as to a question of law and fact.]"

The prevailing opinion states that it was claimed in

oral argument by the state that when the legislature pre-
scribed by statute the form of the affidavit, it intended
to declare that an allegation in the statutory form was
proof sufficient to determine the question of probable
cause and that, upon such an allegation being made,
"the magistrate must find that probable cause existed
upon which to issue a search warrant"; and the court
says that the legislature has not power to say to any ju-
dicial officer "that when he has heard proof of certain
facts, the evidence thus adduced before him shall con-
stitute conclusive proof," etc.

We did not understand counsel for the state to make
any such claim.    Counsel agreed that the function of
the issuing magistrate was judicial, and contended that
the magistrate, in determining whether probable cause
existed, might consider the affidavit itself as some evi-
dence, and might consider the credibility of the person
making the affidavit.    The cases just quoted from:
*Loeb* v. *State, supra, State* v. *Quintini, supra, State* v. *Hall,*
*supra,* as well as some of the cases hereinafter cited, show
clearly that such a statute as ours does not say to a ju-
dicial officer how he shall decide a matter before him.

Some of the cases however have gone so far as to hold
that when the legislature has expressly set out exactly
what is required to be alleged in a sworn affidavit in or-
der that the magistrate "shall issue" a search warrant,
that, when such an affidavit is filed, there is nothing ju-
dicial to be done by the magistrate, the statute being
mandatory and the act of issuing the warrant ministerial.
*State* v. *Conwell* (1902), 96 Me. 172, 51 Atl. 873, 90 Am.
St. 333; *Rosanski* v. *State* (1922), 106 Ohio St. 442, 140
N. E. 470.    In the latter case, the search warrant was
issued by the clerk of the lower court.    The Supreme
Court pointed out that it had recognized the validity as
a ministerial act of the universal practice for more than
fifty years, of issuing warrants for arrests (under §13486

Ohio Gen. Code) and that it had always been considered the proper practice to issue search warrants (under 13486) without a preliminary order in conformity to the similar practice in cases of arrests.

In *Dupree* v. *State* (1909), 102 Texas 455, 119 S.W. 301, where a statute required the issuance of a search warrant upon the filing of an affidavit of belief, the court said:

"The legislature has thus, in effect, determined that *such oaths, in themselves, show probable cause*, and we are confronted by the question whether or not it had power to do this. It is obviously true that the legislature cannot dispense with the requirement of the Constitution that probable cause be shown, and that, therefore, it cannot evade this limitation upon its power by an attempt to make that probable cause which plainly is not such. But have we such a case? In determining a question like this, we must take into consideration the history of the subject, and what has been regarded as probable cause, and when we find that that which *the legislature has, in this instance, treated as being sufficient, been thus long and extensively* so regarded here and elsewhere, by both legislature and judicial authority, it would be difficult to say that there is such a plain and palpable violation of the Constitution as to justify the courts in declaring the statute void." (Our italics.)

In *State, ex rel.,* v. *Gordon* (1917), 95 Wash. 289, 163 Pac. 772, under a statute providing that "if, upon the sworn complaint of any person, it shall be made to appear to any judge . . . that there is probable cause to believe" that intoxicating liquor was being manufactured, sold, kept, etc., "such judge shall . . . issue a warrant . . . to search," and a complaint alleging that complainant "has probable cause to believe and in fact does believe" etc., the court held that there is no requirement that the "probable cause" necessary

before any warrant may issue must be stated in the complaint. The court said:

"The only requirement is that probable cause must be shown sufficient to create the belief in the mind of the judge or justice that liquor is being sold, or otherwise disposed of, contrary to law. The ascertainment of probable cause is, under this statute, a judicial function involving judicial discretion. *Toole* v. *State*, 170 Ala. 41, 54 South 195; *State* v. *Hobbs*, 39 Me. 212. That there is 'probable cause' must be determined before the issuance of a warrant, but being determined to the satisfaction of the judge or justice, it is sufficient without its statement or formal charge in the complaint. *DeGraff* v. *State*, 2 Okl. Cr. 519, 103 Pac. 538; *Kniseley* v. *Ham*, 39 Okl. 623, 136 Pac. 427, 49 L. R. A. (N. S.) 770.

"It is next urged that a search warrant cannot be based upon a complaint made upon belief. Both the search warrant and the complaint stated all that was required to be stated. Neither one is confined to the existence of a mere belief in the mind of the complainant, but follows the language of the act in stating that the belief of the complainant is founded upon probable cause for the existence of such belief. Whether or not this probable cause is sufficient to initiate legal process is to be determined by the judicial officer, and when the judicial officer is so satisfied, process may properly issue without a statement in the warrant or complaint of facts upon which such belief is founded. *Rose* v. *State*, 171 Ind. 662, 87 N. E. 103; *Lowery* v. *Gridley*, 30 Conn. 450; *Gray* v. *Kimball*, 42 Me. 299; *State* v. *Nowlan*, 64 Me. 531; *Salley* v. *State*, 9 Ala. App. 82, 64 South 185."

In *State* v. *Kees* (1922), 92 W. Va. 277, 145 S. E. 617, 27 A. L. R. 681, it was held that an affidavit by a sheriff, "that he has cause to believe and does believe that intoxicating liquors . . . are being manufactured, . . . and stored for sale or barter" in certain de-

scribed premises was sufficient to authorize the issuance of a search warrant; that "it is competent for the legislature to prescribe what shall constitute probable cause for the issuance of such warrant, so long as it does not permit the issuance thereof otherwise than upon an information under oath or affirmation." The court, after citing authorities both for and against the sufficiency of such a warrant said:

"A perusal of the authorities we have cited will illustrate the divergence of judicial decisions upon this question. It occurs to us that the conflict arises because of the different views that the courts apparently have as to the purpose sought to be accomplished by the constitutional provision. Some of the courts apparently have the view that the constitutional inhibitions against unreasonable searches and seizures, and against the issuance of any warrant therefor, except upon complaint made upon oath or affirmation, were for the purpose of guaranteeing to the citizen an immunity which he did not theretofore possess, while the other line of authorities is based upon the view that these constitutional inhibitions were for the purpose of guaranteeing to the citizen a right of immunity already possessed by him. In the application of any constitutional provision it is always important to inquire what was the state of the law at the time such provision became part thereof. Under the common law in effect in this country at the time of the adoption, not only of the federal Constitution, but of the various state constitutions, search and seizure warrants were issued, but they were only allowed to be issued upon a complaint made upon the oath or affirmation of the party seeking the same. The English Constitution had guaranteed to the citizen this immunity to his person, and premises from search and seizure from a time whereof the memory of man runneth not to the contrary, and we think it may be said that, when the constitutional provision relied upon came into the

organic law of the American states, the purpose was to preserve to the citizen the right then enjoyed by him under the common law of England. It cannot be doubted but that under the common law a complaint made upon the information of the party desiring the issuance of the warrant, in the form of the complaint involved in this case, would have constituted probable cause for the issuance thereof. In fact, an examination of the authorities shows that the usual complaint upon which a search warrant was issued at that time was that the affiant had probable cause to suspect, and did suspect, that an offense was being committed upon particular premises under the control of particular parties. Davis's Criminal Law, p. 527; 2 Hale, P. C. 150. Our statute requires more than was required at common law. Under the statute involved here the informer must not only have reason to suspect, and actually suspect, that an offense is being committed; he must believe, and have reason to believe, that such offense is being committed before the warrant may be issued. If the legislature undertook to permit the issuance of a search warrant upon a complaint not so informative in its terms as the complaint upon which such a warrant could be issued at common law, then it might be contended that such statute would transcend the legislative competence. When, however, the legislative act requires more of the informer than was required at common law, we cannot say that it was not competent for the legislature to prescribe such a rule of evidence, and to make such a complaint probable cause for the issuance of a search warrant. We do not mean to say that a justice would have to issue a warrant upon the presentation of such complaint to him. That question does not now arise. What we do hold is that it was competent for the legislature to pass the act which it did, so far as it prescribed what shall constitute probable cause for the issuance of a search warrant, and that a search warrant issued by a justice upon such showing is not void. It may be that the justice, under some circum-

stances, would be justified in refusing to issue a warrant upon such a showing. The character of the party making the complaint, or other circumstances appearing, might lead him to the belief that there was lack of good faith or lack of substance in the charge, in which event it may be that he would be entirely justified in refusing the warrant until he made further inquiry as to the ground upon which it was asked. We are not called upon at this time, however, to pass upon that question. Upon a careful review of all of the authorities which we have been able to consult, we are of the opinion that a search warrant issued by a justice, or other officer authorized to issue the same, upon such a complaint as was filed in this case, is a proper warrant, and that evidence procured by means thereof may be properly introduced upon the trial of one charged with an offense, if otherwise pertinent."

In *State* v. *Norris* (1926), 161 La. 988, 109 So. 787, it was contended that the Louisiana statute permitted the judge or committing magistrate to issue a search warrant without "probable cause" in violation of the Constitution. This statute, §5, Act. No. 39, Acts La. 1921, p. 43, provides in part, that no place shall be searched except by an officer designated in a search warrant issued by a competent court "upon the filing with said court of an affidavit reciting the facts that affiant has reason to believe and believes" etc. "together with such additional evidence as the court may require." The court said: "The language of the affidavit on which the search warrant was issued tracked the statute literally; so that the complaint in that respect was, not that the affidavit did not conform with the requirements of the statute, but that the statute itself was violative of the Constitution." The court declared the statute valid and said:

"The constitutional inhibition against the issuance of search warrants without probable cause does not undertake to command the lawmaker to es-

tablish a definition or formula for determining what shall be 'probable cause.' It merely forbids the law-maker to authorize the issuing of search warrants except upon probable cause. *As to what is probable cause, in a given case, is left, largely and necessarily, to the judgment and discretion of the judge or magistrate having authority to issue the warrant.*" (Our italics.)

In *Commonwealth* v. *Schwartz* (1923), 82 Pa. Super. Ct. 369, 374, a statement under oath that affiant "has been informed by credible persons that they have bought from the defendant intoxicating liquor at the place herein-after described, and from his own observation is satisfied that there is probable cause to believe," etc., was held to be a sufficient showing of probable cause, supported by oath. The court said:

"The same provision of the Constitution which protects the people from unreasonable searches also protects them from unreasonable arrests; and yet it was held in *Commonwealth* v. *Green* (1898), 185 Pa. 641, 40 Atl. 96, that an information is sufficient to support a warrant of arrest where the affiant affirms 'to the best of his knowledge, information and belief,' which is certainly no stronger than the words from the act above quoted. . . . The affiant is not restricted to violations of law within his own knowledge, nor is he bound to set forth the names of witnesses or the details as to what they would testify. Probable cause does not import absolute certainty. It only implies reasonable grounds for belief, and the justice issuing the search warrant is the authority to be satisfied that probable cause exists."

In *Cochran* v. *State* (1922), 105 Ohio St. 541, 138 N. E. 54, it was held that certain liquors taken by officers by virtue of search warrants were competent evidence where the affidavits upon which they were is-

sued alleged in the language of the Ohio statute, (Crabbe Act, Gen. Code §6212 *et seq.*) that "affiant believes and has good cause to believe," etc. The court said:

"The affidavit employs the precise language of Section 13483, General Code, which is substantially the same language as has been in force in this state since 1837, and seems never to have been previously attacked. It is contended that such warrant was not issued on probable cause, and that such affidavit was not the oath or affirmation which the constitution and statute contemplated shall support the issuing of a writ, and that the affidavit, not having set forth facts justifying the belief, is insufficient. Section 14, Article 1, of the Ohio Constitution is substantially the same as the fourth amendment of the Federal Constitution (reciting it). The question of the sufficiency of an affidavit based on information and belief in making out probable cause and thereby meeting the constitutional requirements has been passed upon by the courts of last resort of many states, but we find the decisions far from uniform upon the proposition. Before a statute will be held to be in contravention of the con-stitution the conflict must be found to be clear and irreconcilable, and that is particularly true where there has been general acquiescence in the validity of such statutes by legislative and judicial authority throughout the many years of its application and enforcement. (And after reviewing many authori-ties): These cases and others which might be cited are authority for the proposition that determination of probable cause is a matter for the magistrate issuing the warrant, and that such finding may properly be based upon an affidavit of 'belief and good cause for belief.'"

In *Rosanski* v. *State* (1922), 106 Ohio St. 442, 140 N. E. 370, the matter again came before the Ohio Supreme Court. The court there reviewed the constitutional provision against search and seizure (§14, Art. 1, Ohio Bill of Rights), the search and seizure provision of

the Crabbe Act (Ohio Gen. Code 6212-13 *et seq.*) and also the older provisions of the code relating to searches and seizures (Ohio Gen. Code §13483). The court said:

"It will further be seen that that section makes no requirement that there be a preliminary hearing or that other evidence in support of the affidavit be offered, or that there be a preliminary finding by the magistrate of probable cause, but it is sufficient if an affidavit be filed containing the necessary allegations as to the offense committed, the description of the property and the affiant's good faith in invoking the process of the court."

The court then quoted the provisions of the code respecting arrests (Ohio Gen. Code §13496) which provides that when an affidavit is filed with a justice of the peace, mayor or police judge he shall issue a warrant for the arrest of the accused, "if he has reasonable ground to believe that the offense charged has been committed." The court said:

"It is very clear . . . that the statutory requirement relating to arrest of persons is more stringent than the statutory requirement relating to search and seizure of property, and this is as it should be. Both of these sections of the Code were enacted at the same time and have been in force for more than fifty years, and, while the practice has not been definitely settled with relation to the necessary preliminary steps in issuing a search warrant, the practice has been quite uniform for more than a half century to require nothing more than the filing of an affidavit as the basis for the issuance of a warrant, for arrest. Since the statutes are so similar, except for the statute relating to arrest being somewhat more stringent, and since the same section of the Bill of Rights must necessarily apply to both, manifestly the rule contended for by counsel for the accused in these cases could not be sustained without declaring the same rule in proceedings for arrest of the person, and no change could be

made in either without overturning the well-settled practice of more than half a century."

The court, in the case at bar, to sustain the principal proposition set out in the prevailing opinion, cites one case each from California, Georgia, Illinois, Indiana, Missouri, Mississippi, North Dakota, New York and Wyoming, three cases from Michigan, nine from the federal courts and one case from Ontario. We shall briefly consider these cases and endeavor to show that they do not sustain the court in its holding.

The language used in *State* v. *Derry* (1908), 171 Ind. 18, 85 N. E. 765, 131 Am. St. 237 had no reference to the sufficiency of an affidavit upon information and belief as the foundation for issuing a search warrant, but only referred to the lack of any right to confiscate and destroy, without an adjudication that they were kept or used for unlawful purposes, articles, the possession of which was not necessarily unlawful, and only became unlawful when such articles were used for purposes forbidden by law. In *State* v. *Derry, supra,* the property consisted of slot machines, tables and other articles seized as gambling apparatus under a search warrant issued upon an affidavit charging that they were being used in a specified building for gaming purposes. No question was made as to the sufficiency of the search warrant or the affidavit on which it was issued, and the only question decided on appeal was that the trial court was not bound to order the property destroyed without a prior adjudication that the articles were being kept for gaming purposes, or were being permitted to be used for gaming purposes. And holding that such an adjudication must precede destruction, the Supreme Court dismissed an appeal by the state from the refusal of the trial court to order their destruction on motion, and its order that the property remain in the custody of the sheriff until disposed of according

to law, on the ground that there had been no final judg-
ment from which to appeal.

*In Ex parte Dimmig* (1887), 74 Cal. 164, no search
warrant was involved. It was an action for a writ of
*habeas corpus* by one who had been charged *in an affidavit
on information and belief with the crime of murder.* He
was arrested and imprisoned apparently without any
compliance with an express statute requiring the magis-
trate to examine the informant and witnesses under oath
and take in writing their depositions tending to estab-
lish the guilt of the defendant.

In *Lippman* v. *People* (1898), 175 Ill. 101, a search
warrant had been issued under the Illinois Trade Mark
Act of 1873. The court after holding the law invalid as
a special law said:

> "The search warrant provided for can be issued
> only at the instigation of the owner of the property
> to be searched for, or his agent, and, as already
> shown, is to be employed merely for the mainte-
> nance of his rights by making the officers of the State
> searchers for his bottles, kegs, etc. *The premises of
> a citizen cannot be intruded upon, under a search
> warrant, for any such private purpose."* (Our italics.)

In *People* v. *Heffron* (1884), 53 Mich. 527, no search
warrant was involved. The prosecuting attorney filed
an affidavit charging that persons appeared intoxicated
on the streets of Manistique, in which village, no person
was authorized by law to sell liquor, that Heffron pre-
tended to be the proprietor of a saloon and dealer in
liquor and that affiant had reason to believe he was en-
gaged in selling liquor without having executed a bond.
The court held that the affidavit did not "charge any
offense known to the laws of this state," and that to be
sufficient it "must set up facts constituting the offense on
the *knowledge* of the person making the complaint."

The case of *State* v. *Patterson* (1904), 13 N. D. 70,

decided concurrently with and upon the authority of
*State* v. *McGahey* (1904), 12 N. D. 535, was an action for
the abatement of a liquor nuisance under a statute,
§7605 Rev. Code (N. D.) 1899, which provided that the
judge, at the time of granting the injunction, must issue
a warrant commanding a diligent search of the premises.
The statute did not authorize an affidavit on informa-
tion and belief such as the one filed but provided for an
affidavit "stating or showing that intoxicating liquor,
particularly describing the same, is kept for sale," and,
at that time, the general search warrant law of North
Dakota, §8464 Rev. Code (N. D.) 1899, provided that
"the magistrate must, before issuing the warrant, ex-
amine on oath the complainant and any witnesses he
may produce, and take their deposition in writing.  .  .  .
The depositions must set forth the facts."

The search and seizure provisions of the Wyoming
Prohibition Act of 1919 were considered in *State* v.
*Peterson* (1920), 27 Wyo. 185, 194 Pac. 342, 13 A. L. R.
1284.  The court held that an affidavit on information
and belief was insufficient, and that the finding of prob-
able cause could only be vested in a court and not else-
where as by this law, which provided "that anyone may
make complaint to the prosecuting attorney and the pro-
hibition commissioner  .  .  .  and if such officer 'deems
the showing good and sufficient' he shall present the mat-
ter on his own complaint to any court, etc."  The court
expressly recognized that, on the question of affidavits
on information, it departed from the rule laid down in
*Rose* v. *State, supra,* and *Lowery* v. *Gridley, supra,* which
cases it cited.  It pointed out that "this Indiana case is
based on the fact that in that state it had been held that
a warrant for an arrest for crime may issue on an affidavit
based on information and belief," and expresses the
opinion that the Connecticut-Indiana doctrine:  "It is
better that innocent men should suffer temporary incon-

venience than that the guilty should escape punishment" conflicts with the doctrine that "it is better that a hundred guilty men should escape than one innocent man should suffer." We do not see wherein these two doctrines are incompatible nor any reason for departing from the former.

In like manner, the cases of *People* v. *Effelberg* (1922), 220 Mich. 528, 190 N. W. 727 and *Smoot* v. *State* (1925), 160 Ga. 744, 128 S. E. 909, can be distinguished, and it is interesting to note that the Michigan Supreme Court has recently held that where an affidavit gave jurisdiction to issue a search warrant, jurisdiction was not lost by proof *aliunde* that the facts stated therein positively were in reality stated on information and belief. *People* v. *Kerwin* (1926), 234 Mich. 686, 209 N. W. 157. See, also, *Smee* v. *Commonwealth* (1923), 199 Ky. 488, 251 S. W. 622, and *Bowen* v. *Commonwealth* (1923), 199 Ky. 400, 251 S. W. 625.

*People, ex rel.,* v. *Kempner* (1913), 208 N. Y. 16, 46 L. R. A. (N. S.) 970, 975, does not decide what an affidavit to secure a search warrant should contain, and is not an authority for the purpose cited in the prevailing opinion. *Swart* v. *Kimball* (1880), 43 Mich. 443, 445, is only an authority to the point that the affidavit to an information which states that affiant has good reasons to believe and does believe is not such verification as will warrant an arrest.

*State* v. *Lock* (1924), 302 Mo. 400, 259 S. W. 116, arose under a law (Session Laws 1919 as amended by Session Laws 1921, §6595) which provided that when the attorney general, prosecuting attorney or prohibition officer "filed a statement verified by oath with the clerk of a court having criminal jurisdiction, . . . it shall be the duty of the sheriff to enter the building. . . ." Not only did it fail to provide for any judicial determination, but it failed to provide even for the issuance of a

search warrant. Missouri passed another law on the same subject in 1923 and, in considering it, the Supreme Court of that state has followed the *Rose case* (Ind.), *supra, Kees case* (W. Va.), *supra,* and *Lowery* v. *Gridley* (Conn.), *supra.* See quotation from *State* v. *Hall, supra.*

The case of *Regina* v. *Walker* (1887), 13 Ont. 83, cited by the court, is not in point here, because it appears (p. 95) that the statute under which the search warrant was issued required "the informant, in addition to stating that he has just and reasonable cause to suspect and doth suspect that intoxicating liquor . . ., etc. is concealed, etc., to state the cause of suspicion and particulars of the offense alleged to have been committed."

The cases concerning the issuance of search warrants for intoxicating liquor which have been decided by the United States courts are not applicable or controlling in the case at bar, because they are all based on the specific statutory procedure prescribed in the national Prohibition Act, viz. the provision of title XI Act June 15, 1917 known as "the Espionage Act," hereinbefore quoted on pages 353 and 354 of this opinion. It will be observed that whatever is required by this act in addition to an affidavit for a warrant may be shown by way of "depositions."

And, notwithstanding this statute, the United States Circuit Court of Appeals for the Third Circuit held (and the Supreme Court refused to disturb the holding) that an affidavit, sworn to on July 17, by a prohibition agent, stating that he had "good reason to believe" a quantity of whisky was concealed on the premises of Q. at a place described, and that his information as to sales of liquor by "Q" was obtained from affidavits made by M. and G. respectively, was sufficient to support a search warrant, although the warrant did not recite an adjudication by the commissioner that he found probable cause to exist,

. it appearing that affidavits made by M. and G., respectively, in June, had each stated that the affiant bought a drink of whisky from Q. at said place, on June 26, three weeks before the prohibition agent made his affidavit on which the warrant was issued. The court said:

"The inhibition is not against every search and seizure, but against unreasonableness, and what constitutes the basis and warrant for reasonable searches and seizures is defined, namely, the existence of a fact, and that fact is probable cause; and secondly, the evidence of that fact, namely, an 'oath or affirmation and particularly describing the place to be searched and the persons or things to be seized.' The foundation of a reasonable search and seizure, as constitutionally defined, is the existence of probable cause, and the Constitution does not provide that a finding of probable cause by a magistrate is either a foundation for warrant issue, [that] will justify the warrant where the fact of probable cause does not exist, or that such finding of probable cause by the magistrate is necessary. It is 'particularly describing the place to be searched and the persons or things to be seized' which the Constitution requires should be evidenced by affidavit, and when the affidavit measures up to this constitutional requirement, then a warrant may lawfully issue." *Hawker* v. *Queck* (1924), 1 Fed. (2d.) 77, 79, *certiorari* denied 266 U. S. 621, 45 Sup. Ct. 99, 69 L. Ed. 472.

The texts of Corpus Juris and Ruling Case Law (so far as they state the rule in Indiana and the Indiana citations) are *directly opposed* to the proposition to which they are cited in the prevailing opinion.

"In several states an affidavit based on information and belief is sufficient to show probable cause. . . ." Citing *Toops* v. *State*, 92 Ind. 13; *Franklin* v. *State*, 85 Ind. 99; *Deveny* v. *State*, 47 Ind. 208; *State* v. *Buxton*, 31 Ind. 67; *State* v. *Ellison*, 14 Ind. 380. 16 C. J. 292.

"The affidavit must comply with the statutory requirements regulating the issuance of such writs. . . . It is sufficient if it alleges reasonable grounds for suspecting a felony by the defendant. . . . It is generally held that an affidavit is not sufficient if it is made on information and belief and is not corroborated or supported in any way (citing one North Dakota and one Ontario case) though the opposite conclusion has also been reached." Citing *Rose* v. *State*, (1909), 171 Ind. 662, 87 N. E. 103, 17 Ann. Cas. 228 and note. 24 R. C. L. p. 708.

Likewise, in 6 Words and Phrases (1st series) 5619 and 5625, it is said:

"The phrase 'probable cause' does not mean a positive cause. An indictment imports only probable cause, and probable cause is sufficient ground of an indictment by a grand jury. A party may be arrested and tried on a complaint made before a justice of the peace under oath, charging him on the information and belief of the complainant," etc.
"Probable cause does not depend upon the actual state of the case in point of fact, but upon the honest and reasonable belief of the party prosecuting." (Citing cases).

Neither are the "erudite pronouncements of those sages of the law," quoted in the prevailing opinion, authority for the decision of this case. What is quoted as the language of Chief Justice Marshall seems, from the report of the case in *Ex parte Burford* (1806), 3 Cranch (U. S.) 448, 2 L. Ed. 495, really to have been what was said in argument by attorney Hiort, who represented the prisoner. But, by whomever spoken, the words had reference to a case where certain justices of the peace had ordered that the prisoner be arrested, and then had committed him to a jail of the District of Columbia, without any affidavit whatever having been filed by anybody, whether upon information and belief or otherwise, so they have no bearing on the question here involved.

The decision of the Supreme Court of Massachusetts in *Fisher* v. *McGirr* (1854), 1 Gray (Mass.) 1, 61 Am. Dec. 381, is thus (correctly) stated by the reporter in the syllabus:

"The fourteenth section of Massachusetts statute of 1852, C. 322, concerning the manufacture and sale of spirituous or intoxicating liquors, is contrary to the 14th article of the Declaration of Rights, declaring the right of the subject to be free from unreasonable searches and seizures; because it neither requires the name of any person, keeping or depositing the liquors with intent to sell, to be named in the complaint or in the search warrant for the liquors; nor limits the officer's authority and right of seizure to the liquors described in the complaint, nor to those intended for sale, but directs him to seize any liquors found in the place described in the complaint. This section also disregards *other* precautions and safeguards for the security of persons and property prescribed by the Declaration of Rights," (in particulars as stated).

The discussion throughout the opinion is of the insufficiency of the warrant as being general, instead of particular, and as providing for the destruction of private property and the punishment of its owner or keeper without his being charged with any offense and without a legal trial upon proof offered and an opportunity to defend. A necessity for affidavits as to the personal knowledge of the affiants instead of their belief and reason to believe is not even suggested in the opinion. And it does not appear from the report of the arguments of counsel that any such a point was suggested in argument. The report and syllabus were prepared by Horace Gray, who afterward became, successively, Chief Justice of Massachusetts and Associate Justice of the Supreme Court of the United States.

*In re Rule of Court* (1877), 3 Woods (U. S. C. C.) 502,

was the promulgation of a "general order for the guidance of the commissioners" of the United States Circuit Court for the Northern District of Georgia. This *ex parte* order provided that no commissioner should issue a search warrant except upon an affidavit "in which shall be stated the facts within his own knowledge constituting the grounds for such a belief or suspicion." The judge stated that great inconvenience was caused by the arrest of persons charged with offenses against the revenue laws against whom no sufficient evidence could be produced, either before the grand jury or the traverse jury. This was, doubtless, reason enough for making the order. He added a constitutional argument which cited no authority and offered no reasons except the language of the Constitution itself. The adoption of this rule of court effected the same result in the jurisdiction of that court as was obtained by the several state statutes and the United States statute hereinbefore noted. It cannot be of binding force, nor even advisory in this jurisdiction, in view of our statute.

Judge Baker, in *Veeder* v. *United States* (1918), 252 Fed. 414, graphically outlines a number of facts which show a vast difference between the affidavit there and the one in the case at bar. There, an examiner for the Federal Trade Commission sought to obtain a large number of documents from the office of Veeder, who was attorney for one of the five big Chicago meat packing companies. The statute applied only to property that "was used as the means of committing a felony" yet the affidavit—unlike the one in the instant case which was for property the mere possession of which is a crime—"included Veeder's In Memoriam file, his lists of law books, his copies of the smoke and wide tire ordinances of Chicago, his office keys, etc." The court said:

"No search warrant should be broader than the justifying basis of facts. For example, if a murder

has been committed by means of a shot from a gun and by no other means, the search warrant should not direct the officer to enter the accused's home and seize the family register of births and deaths."

The felony must be one that is presently prosecutable, the court saying: "No judge would issue a search warrant directing the officer to break into a museum and seize and carry away the dagger Brutus used in assassinating Caesar."

Attorney General Knox did say that §3462 U. S. Rev. Stat. regarding searches by internal revenue officers "does not state all of that which must be stated in the application" but the remainder of the statement attributed to him does not appear in 24 Op. Attys. Gen. 685. The opinion there rendered, was, that it is the duty of United States commissioners to issue search warrants when properly applied for even though no fees are allowed for issuing them.

We approve the lofty sentiments, expressed in the prevailing opinion, regarding the imperious nature of the Constitution, and the fact that it is "a refuge to protect our very social and political life," but we believe the application here of those well-phrased sentiments requires the upholding of our long-established and well-settled procedure, which is designed to protect our social and political life.

The judgment should be affirmed.